STATE of Wisconsin, Plaintiff-Respondent,

v.

Wallace R. O'NEILL, Defendant-Appellant-Petitioner.

Supreme Court

*No. 82–1506–CR. Argued September 6, 1984.—*
*Decided December 21, 1984.*

(Also reported in 359 N.W.2d 906.)

For the defendant-appellant-petitioner there were briefs by *Dennis J. Sieg, Jack McManus* and *McManus Law Offices,* Madison, and oral argument by *Mr. McManus.*

For the plaintiff-respondent the cause was argued by *Kirbie Knutson,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

WILLIAM G. CALLOW, J.   This is a review of an unpublished per curiam decision of the court of appeals affirming a judgment of conviction for burglary entered by the circuit court for Eau Claire county, Judge William D. O'Brien. We reverse the court of appeals.

The issue presented for review is whether this case was properly submitted to the jury on the burglary charge.

The defendant, Wallace R. O'Neill, was the supervisor of police officers at the University of Wisconsin-Eau Claire, Department of Safety and Security (Department). He had been employed by the Department since 1970. On September 27, 1981, the Department received a report from several university students that stereo components and some clothing had been taken from their dormitory rooms.

On October 5, 1981, O'Neill was contacted by Allen Sanders, an Eau Claire resident, with whom O'Neill had previous contacts on campus. Sanders informed O'Neill that he believed one of his roommates, James Ward, had brought a stolen stereo into the house they shared at 720 Chippewa Street, Eau Claire. Sanders'

description of the stereo appeared to match the equipment which the students had reported missing on September 27. Sanders told O'Neill that he wanted the stereo out of the house because he was afraid he would get into trouble if it remained on the premises. Sanders stated that he would admit O'Neill or any other officer into the house for the purpose of removing the stereo.

Sanders refused to accompany O'Neill to the district attorney's office to sign a complaint and requested that his name not be divulged. O'Neill telephoned Eau Claire Assistant District Attorney Daniel Enright and asked him to obtain a search warrant on the basis of Sanders' tip. Enright stated that, before a search warrant could be obtained on the basis of an anonymous tip, it would be necessary to show that the informant was reliable. O'Neill then identified Sanders as the informant. Enright stated that he did not feel a search warrant could be obtained unless Sanders would allow his name to be disclosed. Enright and O'Neill then discussed alternative ways in which a warrant could be obtained. Enright suggested that perhaps the house could be searched with consent of one of the occupants, or that if the property was in plain view, a search could be authorized.

O'Neill sent Robert Shugarts, a parttime patrolman who was a student at the university, and the students whose property had been stolen to the house at 720 Chippewa Street to see if they could identify the stereo. Scott Sieg, the student who owned the missing stereo, looked through a window of the house and saw on a dresser three stereo components which he believed to be his. Shugarts then contacted Assistant District Attorney Enright with this additional information. Enright stated that, because Sieg could not identify any distinguishing marks or serial numbers on the components, he did not believe there was probable cause to obtain a search warrant.

O'Neill then suggested that Shugarts and the students stake out the house. Sieg knocked on the door of the

house, and when James Ward answered the knock, Sieg told him he had reason to believe his stereo was in the house and he wanted to come in and look at it. He was refused entry. Shugarts and the students then continued to observe the house from their car. They saw a vehicle come and go from the house on several occasions. One of the students, who was stationed behind the house, signaled to Shugarts that he saw several people running from the house to the car. The students did not see anything being removed from the premises. Shugarts pursued the car for several minutes and then returned to the house. Sieg again looked in the window where he had previously seen the stereo, and it was gone. Shugarts radioed this information to O'Neill.

Believing that his assistance was needed, O'Neill drove to the house. O'Neill testified that he knocked on the door and it swung open. He stepped inside and called out to see if anyone was home. Receiving no response, he told the students to go in and look for their things. The students searched the house. The stereo was not found, but they located their clothing in closet drawers and in a duffel bag. The missing stereo was later returned anonymously to O'Neill's office.

On the basis of the above activity, O'Neill was subsequently charged with burglary[1] and two counts of misconduct in public office.[2] At trial O'Neill testified that

[1] Section 943.10(1)(a), Stats., states:
"Burglary. (1) Whoever intentionally enters any of the following places without the consent of the person in lawful possession and with intent to steal or commit a felony in such place is guilty of a Class C felony:
"(a) Any building or dwelling."

[2] Section 946.12, Stats., states in part:
"Misconduct in public office. Any public officer or public employe who does any of the following is guilty of a Class E felony:
". . .
"(2) In his capacity as such officer or employe, does an act which he knows is in excess of his lawful authority or which he knows he is forbidden by law to do in his official capacity."

he believed his actions had been authorized because Sanders had given him permission to enter the house.[3] At the close of the testimony, the court submitted only the burglary charge to the jury but identified misconduct in public office as the felony which O'Neill had allegedly intended to commit when he entered the house. The jury found O'Neill guilty of burglary. The defendant's postverdict motions were denied. A judgment of conviction was entered and O'Neill was fined $1,000.

O'Neill appealed the judgment of conviction and the order denying his postconviction motions to the court of appeals, alleging that the trial court erred in numerous evidentiary rulings, in submitting the case on the burglary charge, and in instructing the jury. The court of appeals concluded "that the trial court's rulings and instructions were either proper or were not prejudicial to O'Neill" and affirmed the conviction. O'Neill petitioned this court for review, and we granted the petition on the issue of whether the case was properly submitted to the jury on the burglary charge and on any other issues to the extent they may relate to that issue.

The issue presented is whether a law enforcement officer may properly be charged with burglary where the underlying felony in the burglary charge does not

---

[3] When asked if he believed he had a legal basis for entering the house and recovering the property, O'Neill stated, "Absolutely, Wisconsin statutes state that if you have the consent of one of the owners you can search a place . . . . I certainly had Allen Sanders' consent. He was one of the people that occupied that house."

As part of its case in chief, the state attempted to show that, at the time the entry to the house was made, O'Neill articulated reasons other than Sanders' consent as a justification for his actions. One of the students who participated in the search testified that O'Neill stated "[s]omething to the effect like if justice doesn't work, we'll make it work," at the time he instructed the students to carry out the search.

involve a crime against person or property. The crime of burglary consists of three essential elements: (1) an intentional entry of a dwelling; (2) without the consent of the person in lawful possession; (3) with intent to steal or commit a felony. Sec. 943.10(1), Stats.; *State v. Bowden*, 93 Wis. 2d 574, 582, 288 N.W. 2d 139 (1980). This was not a typical burglary case in that the state did not contend that O'Neill entered the premises at 720 Chippewa Street, Eau Claire, with the intent to steal anything. Rather, O'Neill was charged with entering the premises without consent with the intent to commit a felony. The felony was identified in the criminal complaint as misconduct in public office as proscribed by sec. 946.12(2), Stats.

The defendant contends that the burglary charge was not appropriate and that he should have only been charged with misconduct in public office. While the third element of burglary may be satisfied by proof that the defendant intended to commit a felony, we must decide whether misconduct in public office was contemplated by the legislature when sec. 943.10(1), Stats., was enacted and, therefore, whether misconduct in public office may serve as the underlying offense in a burglary charge.

Although the present statute does not specify which felonies will satisfy the third element of burglary, an earlier version of the statute enumerated some types of felonies which could form the basis of such a charge as "murder, rape, robbery, larceny or other felony."[4] Although that version of the statute allowed other felonies than those specified to form the basis of a burglary charge, the felonies enumerated were all crimes against persons or property. In *State ex rel. Wagner v. Lee*, 220 Wis. 150, 156, 264 N.W. 484 (1936), the defendant had argued that the statute contemplated only

---

[4] Section 343.09, Stats., 1953.

forcible crimes. We stated that the statutory language was "broad enough to include other felonies, such as kidnapping, sodomy, or adultery," even though force was not involved. We did not declare that all felonies were included. The other felonies which we enumerated in *Lee* were also crimes against persons or property. The *Lee* decision is the only case in which this court has considered the types of felonies which may form the basis of the third element of a burglary charge. In a more recent decision of this court where an intended felony rather than intent to steal formed the third element of a burglary charge, the felony was a crime against property.[5] Courts in other states with similar statutes have likewise found that the intended felonies contemplated by the statutes are crimes against persons or property.[6] The acts alleged to constitute the underlying felony charged here were not crimes against persons or property. The acts which precipitated the misconduct charge in this case were the alleged impermissible entry and search of the premises.

The availability of a charge of burglary is not necessary to deter officers from conducting overzealous entries and searches of premises. In addition to the charge of misconduct in public office, other types of discipline are available. The exclusionary rule, which makes il-

---

[5] *See Gilbertson v. State,* 69 Wis. 2d 587, 230 N.W.2d 874 (1975) (intent to commit criminal damage to property).

[6] For example, the Indiana burglary statute, Ind. Code Ann. sec. 35-43-2-1 (Burns 1984), states that a person who breaks and enters a building with the intent to commit a felony commits burglary. In discussing the type of felony contemplated by the statute, the Indiana court of appeals, in *Eby v. State,* 154 Ind. App. 509, 513-14, 290 N.E.2d 89, 93 (1972), quoted with approval 1 Burdick, *Law of Crime* (1946), sec. 120 at 139, " 'The intended felony in burglary is usually larceny, but it may be some other felony such as murder, rape, or arson.' "

legally seized evidence inadmissible in court, has been recognized as a principal means of discouraging unlawful police conduct. *Terry v. Ohio,* 392 U.S. 1, 12 (1968). Civil actions for damages may be brought against officers who conduct unreasonable entries or searches. Officers conducting unreasonable searches may be subject to suits brought under 42 U.S.C. sec. 1983 (1982). *See Monroe v. Pape,* 365 U.S. 167 (1961); *Terry v. Kolski,* 78 Wis. 2d 475, 254 N.W.2d 704 (1977). Officers who exceed the scope of their authority may also be subject to administrative disciplinary action. If a police review board concludes that an officer exceeded his authority in conducting a search, the officer could be suspended or dismissed, subjected to a monetary penalty, or have an entry of misconduct noted in his personnel record. *See* A. Boker and C. Corrigan, *Making the Constable Culpable: A Proposal to Improve the Exclusionary Rule,* 27 Hastings L.J. 1291, 1299–1300 (1976); H. Wingo, *Growing Disillusionment With the Exclusionary Rule,* 25 Sw. L.J. 573, 580–81 (1971); D. Oaks, *Studying the Exclusionary Rule in Search and Seizure,* 37 U. Chi. L. Rev. 665, 674 (1970).

We conclude that the legislature intended to include only offenses against persons and property within the felonies which could form the basis of a burglary charge when sec. 943.10(1)(a), Stats., was enacted. This conclusion is supported by previous statements of this court regarding sec. 943.10(1)(a) and also by statements of other courts interpreting similar statutes. It would be a substantial deviation from past interpretations of the burglary statutes by this court and interpretations by foreign courts of similar statutes for us to find that misconduct in public office was the type of felony which could form the basis of a burglary charge.

We conclude that misconduct in public office is not the type of felony contemplated by sec. 943.10(1), Stats. For this reason, the burglary charge against O'Neill was improper, and we thus reverse the decision of the court of appeals which sustained the conviction. Because we decide this case on the scope of the statute, we are not obliged to review the other issues raised by the parties.

*By the Court.*—The decision of the court of appeals is reversed.

SHIRLEY S. ABRAHAMSON, J. (concurring). The jury returned a verdict of guilty. I agree with the majority that the judgment of conviction and the decision of the court of appeals should be reversed. I do not, however, join the majority opinion.

I shall first discuss the jury instructions, which I conclude were erroneous. Then I shall consider the majority's untoward revision of the burglary statute. Finally I shall consider the majority's failure to set forth the facts developed at trial and the majority's concomitant misinterpretation of the defendant's alleged conduct.

I.

The majority fails to consider the defective jury instructions. I recognize that the defendant failed to object to the instructions at trial and that the state has some basis for stating that the instructions, although not "smooth," were adequate. Nevertheless, I conclude that the instructions were prejudicial error and that the conviction should be reversed.

The circuit court instructed the jury correctly on the first two elements of the crime of burglary: an intentional entry of a dwelling, without the consent of the

person in lawful possession. The circuit court's instructions as to the third element—intent to commit a felony in such place—were incomplete and confusing.

First, the circuit court failed to inform the jury fully of the nature of the alleged intended misconduct in office. The circuit court should have instructed the jury that, as a matter of law, if the defendant searched this dwelling under the circumstances of this case without the consent of a person in lawful possession, the search he performed was in excess of his lawful authority (or was forbidden by law in his official capacity). Secs. 968.10, 946.12(2), Stats. 1981–82. Wis. J.I.—Cr. No. 1731, note 2. Second, although the circuit court apparently concluded that the jury had to determine whether the person in lawful possession had consented to the search, the circuit court failed to instruct the jury on this issue. Wis. J.I.—Cr. No. 1731, note 2.[1] Third, the circuit court should have informed the jury that if it concluded that there was no consent to search, the state had the burden to prove beyond a reasonable doubt that the defendant searched the dwelling knowing or believing that he did not have consent to search it and that the defendant knew or believed that the search was in excess of his lawful authority (or that he was forbidden by law to do such acts in his official capacity). Secs. 939.23(2), 946.12(2), 1981–82. Although the jury during deliberations asked for further instruction relating to the issue of consent to search, the circuit court

[1] "In the usual case the court will be able to determine as a matter of law that the acts claimed to have been committed by the defendant violated his lawful duty or were in excess of his lawful authority, leaving it to the jury to determine whether the defendant in fact engaged in such conduct. If the question whether the conduct does violate the statute raises fact issues, this instruction may need modification accordingly. And, statutes defining the particular officer's duties should be considered." Comment No. 2, Wis. J.I.—Cr. No. 1731 (1966).

merely reread its instruction on consent which related only to the second element of the crime of burglary, not to the third element relating to the felony of misconduct in office.[2]

---

[2] The circuit court instructed the jury on the third element of the burglary charge as follows:

"The third element of this offense requires that the defendant entered 720 Chippewa Street with intent to commit misconduct in public office by conducting an unlawful search which he knew to be in excess of his lawful authority. That is, that at the time the defendant entered to commit misconduct in public office, at the time he entered 720 Chippewa Street.

"Under the Criminal Code the phrase 'with intent to' means that the defendant either has a purpose to do the thing or cause the result specified, or believes that his act if successful will result, will cause that result. The intent to commit misconduct in public office by conducting an unlawful search which he knew to be in excess of his lawful authority is no more or less, correction, which is an essential element of burglary, is then no more or less than the mental purpose to commit misconduct in public office or a belief that the act if successful will cause that result.

"This intent must be formed before entry is made. The intent to commit misconduct in public office by conducting an unlawful search in excess of authority which is again an essential element of burglary is no more or less than the mental purpose to commit that particular felony formed on the instant preceding the entry or sometime theretofore which continues to exist at the time of entry.

"You cannot look into a person's mind to find out his intent. While this intent to commit misconduct in public office by conducting an unlawful search which he knew to be in excess of his lawful authority must be found as a fact before you can find the defendant guilty of burglary, it must be found, if found at all, from all his acts, and his words and his statements, if any, bearing upon his intent.

"I shall now define for you the misconduct in public office.

"Misconduct in public office as defined in sec. 946.12(2) of the Criminal Code of Wisconsin is committed by one who is a public officer and who in his capacity as such officer does an act which he knows is in excess of his lawful authority or which he knows he is forbidden by law to do in his official capacity.

After studying the instructions, I find them preju-
dicially deficient and would reverse the conviction.

As I explain later, I believe that misconduct in office,
under appropriate factual circumstances, is a felony

"The state must prove by evidence which satisfies you beyond
a reasonable doubt there were present the following two elements
of this offense:

"First, that the defendant at the time of the offense was a
public officer, and there is no dispute about that in this case.

"Second, that the defendant in his capacity as a public officer
did an act which he knew was in excess of his lawful authority
or which he knew he was forbidden by law to do in his official
capacity.

"Before the defendant may be found guilty of misconduct under
this section, the state must prove by evidence which satisfies you
beyond a reasonable doubt that the defendant knew or believed
that his conduct was in excess of his lawful authority or that
he was forbidden by law to engage in such conduct in his
official capacity.

"If you are satisfied beyond a reasonable doubt from the
evidence in this case that the defendant was a public officer,
that in his capacity as such officer the defendant did conduct
an unlawful search which he knew to be in excess of his lawful
authority and which the defendant knew or believed that it was in
excess of his lawful authority, and, or that he was forbidden
by law to do such act in his official capacity, then you should
find the defendant guilty of misconduct in public office as
charged.

"If, however, you are not so satisfied, then you must find
the defendant not guilty as it applies to the burglary charge."

This instruction did not give the jury direction that the ab-
sence of consent was the conduct which constituted "an unlawful
search in excess of authority."

In the course of their deliberations, the jury informed the
court, through the bailiff, that they wanted to know "if you have
consent, implied consent and you entered the building, do you
have permission to search. . . ."

In response to this request, the court reinstructed the jury
on consent as the second element of burglary and repeated the
instruction defining consent given as to the second element of
burglary.

included within the range of felonies encompassed in the third element of the crime of burglary. I am uneasy, however, about misconduct in office being used in this particular case as the underlying felony in the burglary charge. Maybe my uneasiness comes from the fact that we have never before seen a burglary charge based on the intended felony of misconduct in public office. My uneasiness is compounded because the entry as well as the search could be the misconduct in office and thus unauthorized entry would play a role in two elements of the burglary charge—in the initial entry and in the underlying felony, the alleged misconduct.

If the intended misconduct in office in this case is the illegal entry, the misconduct might be viewed as a trespassory offense that violates the same interests that are violated by the unprivileged entry that a burglar makes. Sec. 943.10, the burglary statute, penalizes whoever intentionally enters "with intent to . . . commit a felony *in such place.*" (emphasis added) The phrase "in such place" means that the intent formed when entering the structure must be to commit a felony after the unauthorized entry is completed. In this case, if the particular misconduct in office was the illegal entry, the intended misconduct in office would be completed on entry; on entry there would have been no intent to commit a subsequent felony "in such place" as required under sec. 943.10. Furthermore, as the comments to the Model Penal Code explain, all crimes are included within the purpose requirement of burglary except trespassory offenses designed solely to protect the interests that are invaded by the unprivileged entry that a burglar makes. See A.L.I., 2 Model Penal Code sec. 221.1, Comment, pp. 76–77 (1980). Consequently, I believe a plausible argument may be made that misconduct in office cannot be used to satisfy the third element of a burglary charge in this case.

On the other hand, even if a prosecution for burglary is permissible because the intended misconduct was to commit an illegal search, or if the misconduct in office in this case is not designed solely to protect the interests violated by unprivileged entry of a burglar, a charge of burglary appears to be an unfair means by which the prosecutor can raise the misconduct charge to a more serious felony.[3] In this case the circuit court dismissed the misconduct count, but sent the burglary count to the jury. The circuit court did not adequately explain its ruling. According to this record, the crime of misconduct in public office appears to have been completed. If the circuit court was going to strike a count, why did it not strike the burglary count? Conviction of both burglary and the underlying felony of misconduct, although possible, appears harsh, but so does conviction on the burglary charge in lieu of a conviction on the misconduct charge.

## II.

In overturning the conviction, the majority rewrites the law of burglary. The majority says that the word "felony" in the burglary statute does not mean felony; it means offenses against persons and property. "The majority's conclusion defies the expressed will of the legislature and a common sense understanding of the English language." *City of Madison v. Town of Fitchburg*, 112 Wis. 2d 224, 241, 332 N.W.2d 782 (1983) (Heffernan, J. dissenting).

[3] Misconduct in public office is a Class E felony, sec. 946.12 Stats., 1981–82, which carries a maximum penalty of $10,000 or 2 years imprisonment or both. Sec. 939.50(3)(e), Stats. 1981–82. Burglary is a Class C felony, sec. 943.10 Stats., 1981–82, which carries a maximum penalty of $10,000 or 10 years imprisonment or both. Sec. 939.50(3)(c), Stats. 1981–82.

As a result of this revision of the burglary statute, the state obviously cannot recharge this defendant with burglary. Furthermore, it is possible that the state may not be able to recharge this defendant with misconduct in public office because of double jeopardy considerations. Cf. *United States v. Scott,* 437 U.S. 82, *reh'g denied,* 439 U.S. 883 (1978).

Reading the burglary statute, the statutory definition of felony and the misconduct in public office statute together, I conclude that "felony" as used in the burglary statute means felony, that misconduct in public office is defined by the legislature as a felony, and. that misconduct in public office is a felony within the burglary statute.

Sec. 943.10 (1) (a), Stats. 1981–82, defines burglary as entering any dwelling without the consent of the person in lawful possession and *with intent* to steal or *to commit a felony in such place.*[4] Secs. 939.22 (12)[5] and 939.60,[6] 1981–82, define the word *felony* for purposes of the burglary statute (indeed for chapters 939–948 of the criminal code), as a crime punishable by imprisonment in the state prison. Since misconduct in

---

[4] Sec. 943.10 (1) (a) provides:

"**943.10 Burglary.** (1) Whoever intentionally enters any of the following places without the consent of the person in lawful possession and with intent to steal or commit a felony in such place is guilty of a Class C felony:

"(a) Any building or dwelling; . . ."

The reason "stealing" is separately stated is that some charges of stealing may be misdemeanors. For a discussion of the modern statutes and judicial decisions expanding the definition of burglary, see Feeney, *Burglary,* in 1 ENCY. OF CRIME AND JUSTICE 129 (1983); A.L.I. 2 Model Penal Code sec. 221.1, Comment, pp. 60–68, 75–78 (1980).

[5] Sec. 939.22 (12), Stats. 1981–82, provides: " 'Felony' has the meaning designated in s. 939.60."

[6] Sec. 939.60, Stats. 1981–82, provides: "A crime punishable by imprisonment in the Wisconsin state prisons is a felony. Every other crime is a misdemeanor."

public office is a crime punishable by imprisonment, it is a felony. If there are any doubts about misconduct in public office being a felony, the legislature has expressly declared this crime to be a Class E felony punishable by a fine not to exceed $10,000 or imprisonment not to exceed two years, or both. Secs. 939.50(3)(e), 946.12, 1981–82.

Nevertheless, the majority—totally disregarding the statutory language—now concludes that "the legislature intended to include only offenses against persons and property within the felonies which could form the basis of a burglary charge when sec. 943.10(1)(a), Stats., was enacted" and that misconduct in public office, not being "a crime against persons or property," is "not the type of felony contemplated by sec. 943.10 (1), Stats." Pp. 306–308, *supra.*

The majority does not merely state that the charge of misconduct in this case or that the facts of this case do not constitute the kind of felony envisaged by the legislature as falling within the burglary statute. The majority goes further. The majority sets forth a general rule limiting the types of felonies included in the burglary statute, a rule that may well create problems of interpretation that the legislature avoided by the adoption of sec. 943.10 in 1955.

The majority's statement that "courts in other states with similar statutes have found that the felonies contemplated by the burglary statutes are crimes against persons or property" is not supported by the authorities cited by the majority at note 6. Neither *Eby v. State,* 154 Ind. App. 509, 290 N.E.2d 89 (1972), nor the Burdick treatise, which the majority cites, supports this statement. In the *Eby* case, the Indiana statute in issue defined burglary as breaking and entering with intent "to commit any felony therein or to do any act of violence or injury to any human being." The ma-

jority takes language out of context from the *Eby* case and the Burdick treatise. The language focusing on the act of violence or injury was used in connection with an issue of whether the defendant, prior to entry, formed the specific intent. Neither *Eby* nor Burdick was concerned with a definition of the word "felony" in the burglary statute. Compare 3 Burdick, *Law of Crime,* sec. 710, p. 53 (1946).

The majority does not claim that the Wisconsin burglary statute is ambiguous. The majority does not claim that reading the Wisconsin burglary statute to include all felonies thwarts the manifest purpose of the burglary statute, or leads to an absurd, unreasonable result. Nevertheless, the majority violates the rules of statutory interpretation this court follows and undertakes to interpret the plain language of the word "felony" as used in the burglary statute by searching for legislative intent outside the statute.

The majority finds legislative intent in the Indiana *Eby* case discussed above and in the *Lee* case, a 1936 Wisconsin Supreme Court decision. The *Lee* case involved the 1935 burglary statute, not the burglary statute involved in this case which has been in effect since 1955. The 1935 burglary statute penalized any person who shall break and enter any dwelling with intent to commit the crime of murder, rape, robbery, larceny *or other felony.* The defendant in *Lee* asserted that the underlying felonies were limited to felonies committed by force. The interpretation of the phrase "or other felony," which followed an enumeration of specific felonies, gave the courts difficulty. It is this *ejusdem generis* problem that the *Lee* court faced. In *Lee,* the court did not limit the felonies to crimes of force. If the *Lee* case is relevant in interpreting the present burglary statute, and I think it is not, it does not support the majority opinion. The *Lee* court character-

ized the old statutory phrase "or other felony" as "broad and general." See *State ex rel. Wagner v. Lee,* 220 Wis. 150, 156, 264 N.W. 484 (1936).

If the majority believes it should look outside the words of the statute to legislative intent to determine the meaning of the word "felony" as used in the burglary statute, it should turn to the usual sources of legislative intent, *e.g.,* the legislative history. The legislative history is clear. It demonstrates that the legislature intended to include all felonies in the burglary statute and to avoid the problem presented in the *Lee* case. See V Wis. Legis. Council Judiciary Committee Report on the Criminal Code (1953), Comment to sec. 343.10 (stating that felony in the burglary statute is defined by sec. 339.60, now sec. 939.60, which defines felony as a crime punishable by imprisonment in the Wisconsin state prisons) ;[7] Platz, *The Criminal Code,* 1956 Wis. L. Rev. 350, 374 (stating that "Code section 943.10 is broader than the old burglary sections. . . .")

I conclude that under secs. 943.10(1)(a), 939.22(12), and 939.60, Stats. 1981–82, misconduct in public office is a felony as that word is used in the statute defining burglary. As I explained previously, however, the facts

---

[7] "That the actor, at the time he entered the structure, had an intent to steal or to commit a felony in the structure. 'Intent to steal or commit a felony' is a short-hand way of saying that the actor desires to do a certain thing or cause a certain result which in fact constitutes stealing or a felony. It is not necessary to prove that he knew the thing or result intended constituted a crime. A mistake of criminal law is not a defense (see section 339.43). 'Stealing' is defined in section 343.20. 'Felony' is defined in section 339.60. The actor must have the intent when he enters the structure, but such intent generally will have to be proved circumstantially, by what the actor did after he entered the structure. Most burglaries involve an intent to steal, but some involve an intent to commit some felony such as rape or adultery." Comment, note 3, sec. 343.10, Bill No. 100, A. See note 6, *supra.*

of this case raise a question of whether there was, in this case, "an intent to commit a felony in such place."

In any event, even if the majority's limited definition of felony is used, the misconduct charged in this case would be a felony for purposes of the burglary statute. The misconduct in here was a crime against persons and property; it was a crime against the occupants of the dwelling whose possessions were allegedly searched without consent.

In sum, it is easy to understand the majority's discomfort with the charge and verdict in the present case, but the majority ought not to rewrite the burglary statute to avoid addressing the basic underlying concerns that cause its uneasiness.

## III.

Finally, the majority fails to provide a complete statement of the facts developed at trial. The majority states only the defendant's version of events and relegates to footnote 3 a single sentence that intimates there was evidence the defendant knew he did not have consent to enter or to search. In so doing, the majority creates the impression that there was virtually no question that the defendant believed he had consent to enter and search. This impression, however, is not the one a reader gets from the record.

The majority's statement of the defendant's version of what happened—contrary to the rules of appellate practice and procedure which require us to view the evidence in a manner favorable to the jury's guilty verdict—along with the majority's concomitant mistaken view that this case apparently involves an officer's negligent or good faith violation of the authority of his office has serious consequences. It leads the majority to set forth an erroneous view of the penalties that might be

imposed on law enforcement officers who in good faith unintentionally exceed their authority in conducting a search. Pp. 306, 307, *supra*. It leads Justice Ceci in his concurring opinion—without analysis of the record and without giving the prosecuting attorney, or the state, an opportunity to respond—to castigate the prosecuting attorney for abuse of discretion for prosecuting the defendant when, according to Justice Ceci, "the district attorney had no evidence . . . that O'Neill knew he was acting in excess of his lawful authority." P. 329.

The majority characterizes the defendant's conduct as "overzealous," p. 306, *supra,* a term which is not a word of art in the law. The term "overzealous" implies that the defendant performed his official duties of searching the premises ardently and in good faith but unfortunately acted beyond his authority. The term does not depict—as does the charge of misconduct in office—that an officer intentionally and knowingly took the law into his own hands and acted beyond the scope of legal authority. The majority opinion suggests that the appropriate remedies to be used against the defendant or other police officers who are "overzealous," that is, those who act in good faith but beyond their authority, are: criminal prosecution for misconduct in office, exclusion of the evidence seized, civil actions and suits under 42 U.S.C. sec. 1983 (1982) for damages, and disciplinary action.

If the defendant here was in fact acting in good faith, as the majority implies, I do not think the remedies suggested by the majority to deter the defendant would, or necessarily should, be available.

A brief recapitulation of the evidence demonstrates that the evidence was sufficient to support a charge of misconduct in office and to support the jury's conclusion, which is inherent in the guilty verdict, that the defendant knew that he did not have consent to enter

the dwelling. Several witnesses testified, including the defendant. The defendant claimed he had the consent of Allen Sanders to enter the dwelling and search it even if no one was present. After the defendant entered the unoccupied home, he and the students searched dressers, closets, and nooks and crannies.

The testimony of the other witnesses casts great doubt on the veracity of the defendant. Since the jury brought in a verdict of guilty after having received proper instructions on the first two elements of burglary, it is apparent that the jury did not believe the defendant's assertion that he entered the dwelling believing he had consent to enter. The evidence adduced, believed, and rationally considered by the jury was sufficient to prove the defendant intentionally entered the home knowing that no occupant consented to his entry.

Allen Sanders, an occupant, testified that he told the defendant that he would let the defendant in, if he were home. He did not testify that he gave the defendant permission to enter or search the house if it was unoccupied. The jury could have interpreted Sanders's testimony as supportive of, or as contrary to, the defendant's testimony regarding consent.

The defendant's attempts to get a search warrant could have been viewed by the jury as indicating the defendant knew that he did not have consent to enter the dwelling or, alternatively, that the defendant was trying to protect his informant.

The defendant called on the owner of the stereo and his student friends for assistance in retrieving the stolen stereo. One of the students testified that the front door was closed when the defendant got off his motorcycle, but was open a few minutes later when the students went up to the porch. The jury could conclude that the defendant intentionally entered the dwelling.

A student testified that he heard the defendant say something to the effect of "if justice doesn't work, we'll make it work."

A parttime university police officer, who accompanied the students to the house, testified that he refused to go into the house with the defendant and the students and asked the defendant if the search constituted burglary. The defendant replied "no" because there was no intent to steal.

An Eau Claire police officer who investigated the incident testified that when he asked the defendant whether anyone had questioned the legality of what was happening, the defendant replied that he vaguely remembered someone doing so. The police officer recalled that the defendant may have replied that "these sons of bitches don't care about your property or didn't care about your property, we shouldn't have too much concern about theirs."

Another campus police officer testified that the defendant said that criminals have to expect to "be broken into on" or "walked in on."

The jury could certainly have concluded that had the defendant believed he had consent to enter the dwelling, he would not have made these comments.

Testimony about events following the entry into the dwelling also supports the jury's conclusion that the defendant knew he did not have consent to enter. A third university police officer testified on cross-examination that the defendant had instructed him to visit the students and to tell them to get their stories straight. He testified that he understood the instruction to be to caution the students to make sure they remembered the facts because they might have to testify. Two of the students testified, however, that the defendant had told them to get their stories straight, with one saying that the story they were to tell was that "the door

was open, the wind blew the door open, you saw your coat and you went in and found the rest of your clothes."

In light of the correct instructions given on the first two elements of burglary and the jury's verdict of guilty, the only possible conclusion is that the jury did not accept the defendant's version and was persuaded beyond a reasonable doubt that the defendant intentionally entered the dwelling, knowing that he did not have consent to enter.

The majority concluded that burglary could not be charged, but proceeds to explain the remedies available against an "overzealous" (a word which the majority does not define) law enforcement officer. I conclude that charges of burglary and misconduct in public office would not lie if the officer acted in good faith believing he had authority to act. These crimes require proof that the defendant knew that he was acting without consent to enter and in excess of his lawful authority. If law enforcement officers acted in good faith, they have a defense in an action under 42 U.S.C. 1983. See *Pierson v. Ray,* 386 U.S. 547, 557 (1967) ("the defense of good faith and probable cause . . . available to the officers in the common-law action for false arrest and imprisonment, is also available to them in the action under sec. 1983") ; *Reimer v. Short,* 578 F.2d 621 (5th Cir. 1978), *cert. denied* 440 U.S. 947 (1979) (police officers could avail themselves of an affirmative defense of good faith in a sec. 1983 action alleging unlawful search and seizure if subjective and objective criteria of good faith are met).

Finally, the United States Supreme Court has recognized a limited good faith exception to the exclusionary rule. See, *e.g., United States v. Leon,* —— U.S. ——, 104 S. Ct. 3405 (1984) (objective good faith exception to

exclusionary rule where police rely on search warrant later found to be invalid).

I do not think an officer should necessarily be subject to departmental discipline if in an apparently authorized and good faith fulfillment of a duty she or he erred in respect to the scope of a search.

The majority does a disservice to law enforcement officers in suggesting that they be subject to criminal prosecution for misconduct in office, civil liability, or discipline when they are "overzealous," that is, when they ardently perform their job in good faith. I cannot join this dicta.

For the reasons set forth, I concur in the mandate but do not join the opinion.

STEINMETZ, J. (concurring). I agree with the court that the decision of the court of appeals and judgment of conviction should be reversed. I write to state my disagreement with the conclusion of the majority opinion and concurring opinion that a charge of misconduct in office pursuant to secs. 968.10 and 946.12(2), Stats.,[1] is a permissible charge for a police officer enter-

---

[1] Sec. 968.10, Stats., provides:

"**968.10 Searches and seizures; when authorized.** A search of a person, object or place may be made and things may be seized when the search is made:

"(1) Incident to a lawful arrest;

"(2) With consent;

"(3) Pursuant to a valid search warrant;

"(4) With the authority and within the scope of a right of lawful inspection;

"(5) Pursuant to a search during an authorized temporary questioning as provided in s. 968.25; or

"(6) As otherwise authorized by law."

Sec. 946.12, Stats., provides:

"**946.12 Misconduct in public office.** Any public officer or public employe who does any of the following is guilty of a Class E felony:

ing a premise to conduct a search without a search warrant, consent or exigent circumstances. This conclusion assumes the officer had no other purpose for the entry than to conduct a search. The majority writes that an over-zealous entry and search of a premise are grounds for a charge of misconduct in public office.

I am of the opinion that a determination of whether an officer did not have consent pursuant to sec. 968.10, Stats., or consent or exigent circumstances pursuant to the fourth amendment of the United States Constitution[2] or Article I, sec. 11 of the Wisconsin Constitution[3]

"(1) Intentionally fails or refuses to perform a known mandatory, nondiscretionary, ministerial duty of his office or employment within the time or in the manner required by law; or

"(2) In his capacity as such officer or employe, does an act which he knows is in excess of his lawful authority or which he knows he is forbidden by law to do in his official capacity; or

"(3) Whether by act of commission or omission, in his capacity as such officer or employe exercises a discretionary power in a manner inconsistent with the duties of his office or employment or the rights of others and with intent to obtain a dishonest advantage for himself or another; or

"(4) In his capacity as such officer or employe, makes an entry in an account or record book or return, certificate, report or statement which in a material respect he intentionally falsifies; or

"(5) Under color of his office or employment, intentionally solicits or accepts for the performance of any service or duty anything of value which he knows is greater or less than is fixed by law."

[2] Article IV of the United States Constitution provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

[3] Article I, sec. 11 of the Wisconsin Constitution provides:

"Searches and seizures. SECTION 11. The right of the people to be secure in their persons, houses, papers, and effects against

is either a constitutional fact or conclusion determinable by a judge, not a jury.

For a charge of misconduct in office due to an officer's entry knowingly without legal authority, the judge would have to make a threshold legal determination that the officer's entry into the premises was without lawful authority either by finding there was no valid search warrant, consent or exigent circumstances. The judge would then have to inform the jury that it must accept that the entry was without lawful authority and that it must then decide whether the officer knew at the time of his entry he did not have lawful authority. This would be an anomaly in Wisconsin criminal practice. We do not allow the judge to comment in criminal cases to the jury on the proof of a fact necessary for the jury to make a decision. The judge would already have determined it was an unreasonable entry and would inform the jury of that conclusion and then the jury would decide whether the unreasonable act was done knowingly. In other criminal prosecutions the jury is instructed as to what the unlawful act is in law and then the jury must apply the facts of the case to that law to determine guilt or innocence. However, the judge does not tell the jury the defendant did an unlawful act as decided by the judge and it must only determine intent. The prejudice to the defendant in the charge of misconduct in office would be overwhelming since the jury would be told by the judge the officer's acts were as a matter of law contrary to the property owner's rights.

I would find an unlawful search by an officer does not serve as the foundation for a charge of misconduct

unreasonable searches and seizures shall not be violated; and no warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized."

in office. There are sufficient sanctions imposed on officers for unlawful searches as described in the majority's opinion. I would not further stifle police officers' investigative duties by subjecting them to criminal sanctions under the crime misconduct in public office for a search, even if the proof could be accepted by the jury as showing the officer at the time of the entry had reason to believe he did not have a search warrant, exigent circumstances or consent.

With the law of search and seizure changing periodically due to the makeup of the United States Supreme Court membership, what is known by specialist attorneys and judges today in the criminal law as unlawful or unreasonable may not remain unlawful or unreasonable in the future. Many "experts" were surprised and upset by that Court's decision in 1984 in *United States v. Leon,* 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984), that good faith by an officer in executing an invalid search warrant makes the search a lawful one. What is a lawful entry and search has been a changing subject in the law and officers should not be criminally liable in a charge of misconduct in office for what is subsequently determined by a judge to be an unlawful entry, even though the officers may have had reason to believe at the time of the entry that it was unlawful or unreasonable.

I would find that a police officer's entry into premises, even if later found to have been unlawful or unreasonable pursuant to constitutional law, does not serve as a foundation for a charge of misconduct in office. If the officer enters for a different purpose than a search, such as to commit a theft or other felony, then he could be prosecuted for the appropriate law violation as any other person.

LOUIS J. CECI, J. (concurring). I fully agree with the majority's reasoning and holding that the burglary

charge against O'Neill was improper. I write separately, however, for two reasons.

First, I believe that the district attorney's office improperly refused to request the search warrant asked for by O'Neill. The probable cause standard used by Enright, the assistant district attorney, in deciding whether to request a judge to issue a search warrant should not be misconstrued as being the law in Wisconsin. O'Neill requested a search warrant on two different occasions. The district attorney refused to request a search warrant the first time because Sanders would not allow his name to be disclosed. An informant's name is not necessarily required to be disclosed before a search warrant is issued. The mere fact that an informant wishes to remain anonymous does not mean *per se* that his information is unreliable.

"In assessing the value and reliability of information provided by an anonymous informant for purposes of establishing traditional probable cause to issue a search warrant, the United States Supreme Court recently held that an anonymous informant's tip should be analyzed under a 'totality of the circumstances' approach, which includes a balanced assessment of the relative weights of all indicia of reliability attending the information. [*Illinois v.*] *Gates*, —— U.S. at ——, 103 S. Ct. at 2330, 2332 [1983]. Prior to issuing a warrant, a magistrate must make a common-sense decision whether, given all circumstances before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that evidence of a crime will be found in a particular place. —— U.S. at ——, 103 S. Ct. at 2332. In determining the overall reliability of an anonymous informer's tip, the 'totality of circumstances' approach permits a deficiency in indicia demonstrating an informer's veracity to be compensated for by a strong showing concerning the informer's basis of knowledge, or by some other indicia of a reliability." *See Id.* at 2329. *State v. Boggess*, 115 Wis. 2d 443, 453–54, 340 N.W.2d 516 (1983) (footnotes omitted).

The request to the assistant district attorney for a search warrant was denied a second time because Sieg could not identify any distinguishing marks or serial numbers on the stereo, even though Sieg saw what he believed to be his stereo through the window of the house. This demand by Enright was unreasonable. Sieg would have had to have been inside the house to provide that specific information. The quantum of evidence necessary to support a determination of probable cause for a search warrant is:

". . . sufficient facts to excite an honest belief in a reasonable mind that the objects sought are linked with the commission of a crime and that they will be found in the place to be searched." *Ritacca v. Kenosha County Court,* 91 Wis. 2d 72, 77–78, 280 N.W.2d 751 (1979).

Enright had been supplied with more than sufficient facts that Sieg's stolen stereo was probably being stored at 720 Chippewa Street. He knew that Sanders lived at the Chippewa Street residence and that Sanders believed that his roommate, Ward, was keeping a stolen stereo there. He was also informed of the fact that Sanders' description of the stereo matched the description of the stolen stereo provided O'Neill by Sieg. Additionally, after Sieg looked through the window into the house, he believed that the stereo which he saw was his stereo. Based on all of this information, the district attorney should have requested a search warrant from a judge.

My second reason for writing this concurrence is that I believe that the district attorney abused his prosecutorial discretion in charging O'Neill with burglary. The charging decision of a district attorney is not unlimited; it has bounds. *State v. Karpinski,* 92 Wis. 2d 599, 608, 285 N.W.2d 729 (1979). We have said,

"[I]t is an abuse of discretion for the prosecutor to bring charges when the evidence is clearly insufficient

to support a conviction or to bring charges on counts of doubtful merit to coerce the defendant to plead guilty to a less serious offense. *Thompson v. State,* 61 Wis. 2d 325, 328–330, 212 N.W.2d 109 (1973)." *Karpinski,* 92 Wis. 2d at 609.

The evidence against O'Neill was clearly insufficient to support a conviction of burglary. The district attorney had various contacts with O'Neill prior to his charging O'Neill with burglary. O'Neill's persistence in trying to secure a search warrant evidences an attempt to recover the stolen stereo within the limits of the law. There was substantial evidence that O'Neill reasonably believed that his entering and searching the premises was legal. I strongly believe that law enforcement officers should not be prosecuted for making honest mistakes. In cases such as this, fear of prosecution for burglary may inhibit officers from carrying out the duties which are within the scope of their authority. Whether entry to premises may lawfully be made because adequate consent has been given or exigent circumstances exist is always a judgment call on the part of the law enforcement officer. To find that officers who exercised faulty judgment should be subjected to criminal prosecution for burglary would be an unreasonably harsh penalty which I do not think the legislature intended.

The district attorney had no evidence of an intent on the part of O'Neill to commit a felony or that O'Neill knew he was acting in excess of his lawful authority, and, therefore, I believe the district attorney abused his prosecutorial discretion in charging O'Neill with burglary.