STATE of Wisconsin, Plaintiff-Respondent,

v.

Jerome G. SEMRAU, Defendant-Appellant.†

Court of Appeals

*Nos. 98–3443–CR, 98–3452–CR. Submitted on briefs October 22, 1999.—Decided February 2, 2000.*

## 2000 WI App 54

(Also reported in 608 N.W.2d 376.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *John D. Lubarsky,* assistant state public defender.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *David J. Becker*, assistant attorney general.

Before Brown, P.J., Nettesheim and Snyder, JJ.

¶ 1. NETTESHEIM, J. Jerome G. Semrau appeals from judgments of conviction for nine counts of sexual exploitation of a child and one count of burglary. Semrau pled guilty to the charges following the trial court's denial of his motion to suppress certain evidence and the denial of his motion to dismiss the burglary charge.

¶ 2. As to the sexual exploitation convictions, Semrau challenges the trial court's denial of his motion to suppress evidence of statements he made to the victim's stepfather who secretly taped the conversation as an agent of the police. Semrau argues that this conduct violated his Sixth Amendment right to counsel because he was represented by an attorney on the sexual exploitation charges at the time of the conversation. Assuming that the trial court erred, we hold that the error was harmless in light of the other compelling evidence demonstrating Semrau's guilt. As such, there was no reasonable probability that, but for the trial court's rejection of the motion to suppress, Semrau would have refused to plead guilty and would have insisted on going to trial.

¶ 3. As to the burglary conviction, Semrau contends that his unauthorized entry into the victim's premises in violation of the conditions of his bond was not the type of underlying felony necessary to support a burglary charge. Semrau bases his argument on the holding of *State v. O'Neill*, 121 Wis. 2d 300, 359 N.W.2d 906 (1984), which requires that the underlying conduct must constitute a crime against persons or property. We hold that Semrau's bail jumping conduct constituted a felony crime against persons or property.

Therefore, the trial court correctly denied Semrau's motion to dismiss.

¶ 4.   We affirm the judgments of conviction.

## FACTS

¶ 5.   The facts underlying Semrau's convictions arise out of two separate, but related, incidents. Between about June 1 and September 30, 1997, Semrau took nineteen sexually explicit photographs of N.L.F., an eight-year-old female child who lived downstairs from Semrau's upstairs living unit. Semrau delivered the film to a store for developing. The store sent the film to an Indiana laboratory. Upon developing the film, the laboratory contacted the Indiana state police, who in turn contacted the Walworth County Sheriff's Department. Based upon this information, Walworth county sheriff's deputies arrested Semrau and executed a search warrant on his residence on November 6, 1997.

¶ 6.   On the same day as Semrau's arrest, Detective Craig Weber of the Walworth County Sheriff's Department and Paula Hocking of the Walworth County Department of Human Services spoke with N.L.F. After having been shown the photographs, N.L.F. indicated that they were taken by her neighbor "Jerry." Several days later, on November 12, Weber showed N.L.F. a photographic line-up that included a picture of Semrau. N.L.F. identified Semrau as the person who took the pictures of her.

¶ 7.   Before the State filed a complaint, Semrau was admitted to bail and released from custody. In addition to other conditions of release, Semrau was to have no contact with N.L.F., her family or their residence. Represented by counsel, Semrau appeared on November 14, 1997, in response to a criminal com-

plaint that charged him with nineteen counts of sexual exploitation of a child contrary to WIS. STAT. § 948.05(1)(b) (1997–98),[1] one for each explicit photograph taken.[2]

¶ 8.   Shortly after his release from custody, Semrau contacted Dean R., N.L.F.'s stepfather. Semrau told Dean R. that he wanted to discuss the case. Dean R. immediately contacted the sheriff's department. After learning that Dean R. had agreed to speak to Semrau later that night, Weber asked Dean R. if he would call Semrau from the sheriff's office so that the phone call could be recorded. Dean R. did so, but Semrau did not want to discuss the matter over the phone. Instead, they agreed to meet face to face and scheduled a meeting for November 20 at a local fast food restaurant.

¶ 9.   At Weber's suggestion, Dean R. agreed to wear a wire to record the conversation with Semrau. Weber also suggested topics that Dean R. should try to get Semrau to talk about. One such topic was to follow up on a comment Semrau had made alluding to payment of money to N.L.F. and her family in exchange for her not testifying.

¶ 10.   Dean R. and Semrau met at the fast food restaurant on November 20, 1997. They discussed the case for more than two hours while Weber monitored and recorded the conversation from the parking lot of a nearby gas station.

---

[1] All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

[2] Originally, Semrau was also charged with four counts of felon in possession of a firearm contrary to WIS. STAT. § 941.29(2). Those charges were eventually dismissed without prejudice.

¶ 11.   On November 25, the day before Semrau's scheduled preliminary hearing on the sexual exploitation charges, N.L.F.'s mother discovered a crumpled-up hand-printed note in N.L.F.'s pillowcase. The note made reference to promises between the author and N.L.F. and warned N.L.F. that if she testified the author would reveal unfavorable information about N.L.F. The note suggested that N.L.F. not go to court, not speak to the authorities and otherwise deny that anything occurred.

¶ 12.   N.L.F.'s mother reported this discovery to the police and advised that her family had been away from the home on two occasions that day. When she returned home in the evening, she found the front door unlocked, even though she thought all the doors had been left locked. She identified the handwriting in the note as Semrau's and stated that he was her former upstairs neighbor. The note also recited the telephone number of Semrau's mother.

¶ 13.   Based upon this event, the State charged Semrau with burglary contrary to WIS. STAT. § 943.10(1)(a), bail jumping contrary to WIS STAT. § 946.49(1)(b) and intimidating a victim contrary to WIS STAT. § 940.44(2). The State later combined the sexual exploitation charges and the new charges into a single amended information.

¶ 14.   Semrau filed various pretrial motions. One of the motions sought to suppress Semrau's tape-recorded conversation with Dean R. In support, Semrau argued that the secret recording of the conversation violated his Sixth Amendment right to counsel because he was then represented by an attorney on the sexual exploitation charges. Another motion sought to dismiss the burglary charge. In support, Semrau argued that his unauthorized entry into N.L.F.'s prem-

ises in violation of the conditions of his release was not the type of underlying felony necessary to support the burglary charge. Specifically, Semrau relied on *O'Neill*, which requires that the underlying crime be one against persons or property. *See O'Neill*, 121 Wis. 2d at 305. The trial court rejected both motions.

¶ 15.   Semrau then entered into a plea agreement with the State. He pled guilty to nine of the nineteen counts of sexual exploitation of a child, as well as the burglary charge. The remaining sexual exploitation charges, the bail jumping charge and the intimidation of a victim charge were all dismissed as read-in charges. Semrau appeals from the ensuing judgments of conviction.

## DISCUSSION

### 1.   Motion to Suppress

¶ 16.   Semrau first challenges the trial court's denial of his motion to suppress his tape-recorded statements to Dean R. He argues that this evidence was obtained in violation of his Sixth Amendment right to counsel because he was already represented by counsel on the sexual exploitation charges.

¶ 17.   The trial court rejected Semrau's motion to suppress because Semrau had initiated the contact with Dean R., because Dean R. was not an agent of the police at the time of the contact and because Semrau's statements were made voluntarily.

¶ 18.   On appeal, Semrau concedes that he initiated the contact with Dean R. and that, at that time of that contact, Dean R. was not a police agent. However, he argues that when he and Dean R. later had their tape-recorded conversation, the police had adopted Dean R. as their agent. From this, Semrau argues

under *United States v. Henry*, 447 U.S. 264 (1980); *Maine v. Moulton*, 474 U.S. 159 (1985); and *State v. Lee*, 122 Wis. 2d 266, 362 N.W.2d 149 (1985), that the police violated his right to counsel.

¶ 19.  The State concedes that the police conduct violated Semrau's right to counsel on the sexual exploitation charges. However, the State contends that the evidence was admissible as to the burglary, bail jumping and victim intimidation charges because Semrau had not yet committed those crimes and, as a result, was not yet represented by counsel as to those matters. Thus, the State concludes that the trial court did not err by rejecting Semrau's motion to suppress. If the case had gone to trial, the State reasons that the trial court could have properly admitted the evidence as to those charges and instructed the jury not to consider the evidence on the sexual exploitation charges. *See State v. Mordica*, 168 Wis. 2d 593, 602–03, 484 N.W.2d 352 (Ct. App. 1992).

¶ 20.  We reject this argument because, unlike the State's analysis, the trial court's ruling did not draw the distinction between the two sets of charges. Instead, the court's ruling was broadly based, appearing to allow the disputed evidence on both sets of charges.[3] Therefore, faced with the trial court's broad-based adverse ruling, Semrau entered into a plea agreement with the State.

¶ 21.  The State, however, has an alternative argument based on harmless error. The State contends that any error by the trial court ruling was of no consequence because of the other compelling evidence

[3] In fairness to the trial court, we also observe that during the trial court proceedings neither the State nor Semrau made the distinction between the two sets of charges.

supporting the sexual exploitation convictions. Improperly admitted evidence constitutes harmless error unless "an examination of the entire proceeding reveals that the admission of the evidence has 'affected the substantial rights' of the party seeking the reversal." *State v. Armstrong*, 223 Wis. 2d 331, 368, 588 N.W.2d 606 (1999) (quoting WIS. STAT. § 805.18(2)). The test for harmless error is "whether there is a reasonable possibility that the error contributed to the conviction." *State v. Dyess*, 124 Wis. 2d 525, 543, 370 N.W.2d 222 (1985). Only if the error contributed to the conviction must a reversal and new trial result. *See id.* The burden of establishing that there is no reasonable possibility that the error contributed to the conviction is on the State. *See id.* Furthermore, our supreme court has made it clear that in cases like this one, appealed under WIS. STAT. § 971.31(10), the use of a harmless error approach is appropriate. *See State v. Armstrong*, 225 Wis. 2d 121, 122, 591 N.W.2d 604 (1999).[4]

¶ 22.  In a guilty plea situation following the denial of a motion to suppress, the test for harmless error on appeal is whether there is a reasonable possibility that the erroneous admission of the disputed evidence contributed to the conviction. *See Armstrong*, 223 Wis. 2d at 372. Recently, this court fashioned a similar test for a plea withdrawal request under a plea agreement where the State had failed to reveal exculpatory evidence. We said "the relevant inquiry is

---

[4] On a motion for reconsideration, the supreme court clarified by adding language to a footnote in its earlier decision in *State v. Armstrong*, 223 Wis. 2d 331, 369 n.38, 588 N.W.2d 606 (1999), that harmless error analysis is appropriate in appeals filed under WIS. STAT. § 971.31(10). *See State v. Armstrong*, 225 Wis. 2d 121, 121–22, 591 N.W.2d 604 (1999).

whether there is a reasonable probability that, but for the failure to disclose, the defendant would have refused to plead and would have insisted on going to trial." *State v. Sturgeon*, 231 Wis. 2d 487, 503–04, 605 N.W.2d 589 (Ct. App. 1999). In answering this inquiry, we looked to: (1) the relative strength and weakness of the State's case and the defendant's case; (2) the persuasiveness of the evidence in dispute; (3) the reasons, if any, expressed by the defendant for choosing to plead guilty; (4) the benefits obtained by the defendant in exchange for the plea; and (5) the thoroughness of the plea colloquy. *See id.* at 504. Based on the entire record in this case, we conclude that there is no reasonable probability that Semrau would not have entered into the plea agreement.

¶ 23.   Apart from Semrau's statements to Dean R., the State was armed with a great deal of incriminating evidence in support of the sexual exploitation charges. First, there are the photographs themselves, which are explicit in nature, and clearly posed. These were directly linked to Semrau not only by the information provided by the developer, but also by N.L.F. who reported to the police that her neighbor "Jerry" took the pictures. In addition, N.L.F. identified Semrau from a photographic line-up. Second, there is the threatening note discovered in N.L.F.'s pillowcase. This too was traced to Semrau by N.L.F.'s mother, who identified the handwriting as Semrau's. Moreover, the note carried the telephone number of Semrau's mother.

¶ 24.   Against this compelling evidence, we look to the evidence that the trial court arguably should have suppressed. The quality of the recording is poor. Much of it is garbled and unintelligible, resulting in many gaps. Furthermore, the essence of the intelligible

and incriminating portions are repeated in a much clearer fashion by the contents of Semrau's note.

¶ 25.   We also observe that the plea agreement in this case was very favorable to Semrau, reducing his potential punishment by more than fifty percent. In addition, Semrau expressed no reservations at the plea hearing about his willingness to enter his pleas, and he has never asserted that the trial court's rejection of his motion to suppress prompted his pleas. Finally, we observe that the trial court conducted a thorough plea colloquy.

¶ 26.   Putting aside the evidence which arguably should have been suppressed, we conclude that the other evidence available to the State placed Semrau in "significant risk of conviction." *See id.* at 503. We hold that there is no reasonable probability that, but for the trial court's failure to suppress the disputed evidence, Semrau would have refused to plead and would have insisted on going to trial.

### 2.   *Burglary Charge*[5]

¶ 27.   Next, we address Semrau's challenge to his burglary conviction. The amended information charged that Semrau intentionally entered the dwelling of the victim without the consent of the person in lawful possession and *with intent to commit a felony*. The parties agree that the underlying felony at issue was Semrau's bail jumping—specifically, his violation of the conditions of his bond that he not have any contact with the victim and avoid her place of residence. However, the

---

[5] The State does not argue that Semrau has waived his challenge to the burglary conviction because of his guilty plea.

parties disagree whether felony bail jumping is legally sufficient to support a charge of burglary.

¶ 28.   Semrau relies on *O'Neill*, which holds that the underlying felony component of burglary must be a crime against persons or property. *See O'Neill*, 121 Wis. 2d at 307. Resolution of this dispute requires us to apply the facts of this case to the burglary statute. This is a question of law that we review de novo. *See Kania v. Airborne Freight Corp.*, 99 Wis. 2d 746, 758–59, 300 N.W.2d 63 (1981).

¶ 29.   In *O'Neill*, the defendant was a campus police officer who was investigating reported thefts involving stereo equipment and clothing. Even after receiving information from a student about his suspicion that his roommate was in possession of some stolen articles, O'Neill was unable to secure a search warrant for the residence because the student was unwilling to sign a formal complaint. Eventually, O'Neill staked out the residence with some students whose property had been stolen. When the suspected thief denied them entry, they waited until the house was empty, knocked on the door and entered after receiving no response. This unlawful entry led to O'Neill being charged with burglary, with misconduct in public office serving as the underlying felony. *See O'Neill*, 121 Wis. 2d at 301–04. A jury found O'Neill guilty. He appealed, arguing that the evidence did not support the trial court's decision to submit the burglary charge to the jury. *See id.* at 304. The court of appeals affirmed O'Neill's conviction and the supreme court accepted the case for further review. *See id.*

¶ 30.   The supreme court observed that the burglary statute did not specify which felonies can satisfy the underlying felony component of burglary. *See id.* at 305. Thus, the court looked for guidance from an earlier

version of the burglary statute that specified "murder, rape, robbery, larceny or other felony" as appropriate felonies. *Id.* (quoting WIS. STAT. § 343.09 (1953)). The court characterized these felonies as "crimes against persons or property." *Id.*

¶ 31.  Revisiting a pair of Wisconsin cases that had spoken along the same lines, the court concluded that "crimes against persons or property" were the appropriate types of crime to satisfy this element of burglary. *See id.* at 305–06 (citing *State ex rel. Wagner v. Lee*, 220 Wis. 150, 264 N.W. 484 (1936), where the court rejected defendant's argument that the statute only contemplated forcible crimes, and *Gilbertson v. State*, 69 Wis. 2d 587, 230 N.W.2d 874 (1975), where the court held that criminal damage to property was an appropriate underlying felony to support a burglary charge). Based on this precedent, the *O'Neill* court concluded that misconduct in public office was not an appropriate type of felony to support a burglary charge. *See id.* at 307.

¶ 32.  Arguing that *O'Neill* controls this case, Semrau focuses on the similarities between the underlying felonies in each case. He notes that both misconduct in public office and bail jumping are contained in the same chapter of the criminal code, WIS. STAT. ch. 946, which covers crimes against government and its administration, not "crimes against persons or property." Semrau further argues that the purpose behind the bail jumping statute is "not only to curb violations of bail, but also to enhance the effective administration of justice."

¶ 33.  While we acknowledge that bail jumping is contained in the same chapter of the Wisconsin statutes as misconduct in public office, we do not deem that fact to be controlling. The State aptly notes that ch. 946

also includes WIS. STAT. § 946.43, Assaults By Prisoners, an offense clearly against persons. While we agree with Semrau that the bail jumping statute serves to curb violations of bail and enhance the effective administration of justice, the supreme court has stated that the statute serves the additional "purpose of protecting members of the community from serious bodily harm or preventing intimidation of witnesses." *State v. Anderson*, 219 Wis. 2d 739, 753–54, 580 N.W.2d 329 (1998) (quoting WIS. STAT. § 969.01(4)).

¶ 34. In assessing whether misconduct in public office was a crime against persons or property, the *O'Neill* court said, "The acts which precipitated the misconduct charge . . . were the alleged impermissible entry and search of the premises." *O'Neill*, 121 Wis. 2d 306. Thus, the court looked to the core conduct in support of the underlying felony allegation. We will do the same here.

¶ 35. Semrau's acts of entering into N.L.F.'s residence and contacting her via his note constitute felony violations of the conditions of his release on the sexual exploitation charges.[6] His note threatened N.L.F. with disclosure of unfavorable information or materials if she testified and sought to dissuade her from testifying. *Anderson* holds that one of the purposes of the bail jumping statute is to prevent the intimidation of witnesses. *See Anderson*, 219 Wis. 2d at 753–54. Certainly intimidation of a witness is a crime against a person. We hold that Semrau's underlying core conduct was a crime against N.L.F.'s person, thereby satisfying the mandate of *O'Neill*.

---

[6] Since the sexual exploitation charges were felonies, the violation of the conditions of Semrau's release on those charges was also a felony. *See* WIS. STAT. § 946.49(1)(b).

521

## CONCLUSION

¶ 36.  Assuming that the trial court erroneously admitted the evidence of Semrau's conversation with Dean R. on the sexual exploitation charges, we conclude that the error was harmless in light of the substantial other evidence establishing Semrau's guilt. Thus, there was no reasonable probability that Semrau would not have pled guilty under the plea agreement and would have insisted on going to trial.

¶ 37.  We further conclude, based upon an analysis of Semrau's core conduct, that his felony bail jumping was an offense against the person of N.L.F. Therefore, Semrau was properly convicted of burglary. We affirm the judgments of conviction.

*By the Court.*—Judgments affirmed.