STATE of Wisconsin, Plaintiff-Respondent,

v.

Xavier J. ROCKETTE, Defendant-Appellant.†

Court of Appeals

*No. 2004AP2731–CR. Submitted on briefs June 22, 2005.
—Decided August 10, 2005.*

2005 WI App 205

(Also reported in 704 N.W.2d 382.)

† Petition to review denied 10-14-05.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Timothy Provis* of Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Peggy A. Lautenschlager,* attorney general, and *James M. Freimuth,* assistant attorney general.

Before Anderson, P.J., Brown and Nettesheim, JJ.

¶ 1. BROWN, J. The facts here are unique in that, while most *Miranda*[1] issues involve situations where custodial questioning occurs without an officer reading warnings and without counsel present, this case is about a lawyer who, while present during questioning, instructed the officer *not* to read the *Miranda* warnings and told his client that if the warnings were not given, whatever he said could not be used in court. This unusual advice did not relieve the officer from reading the warnings—he should have. His failure to do so left open the probability that Xavier J. Rockette, the defendant in this case, believed—based upon his counsel's advice—that his statements could not be

---

[1] *See Miranda v. Arizona,* 384 U.S. 436 (1966).

used against him in court. Thus, there was no knowing and intelligent waiver of the right to remain silent. Nonetheless, we hold that the error was harmless beyond a reasonable doubt because he would have pled no contest even without the statement he gave. The plea bargain reduced his exposure by a large amount, a significant incentive in light of the fact that the State had such a strong case against him even without the incriminating statements. We also address another, lesser issue and affirm the circuit court's decision in its entirety.

¶ 2. This case came about because of charges that arose out of events on three dates. The alleged facts on which those charges were based are as follows. On January 4, 2001, Gerald and Oliver Johnson parked their vehicle in the area of 22nd and Mead Street in the town of Mount Pleasant, Racine county. Oliver left the vehicle and was approached by two men. Gerald recognized Rockette, the shorter of the two, as an acquaintance he knew as "Zac" or "Zeke." An altercation ensued between Oliver and the two men in which Oliver received a severe beating, which caused brain damage that resulted in numerous disabilities. At one point, Rockette held Oliver while the other assailant hit him in the head with a pistol. When Gerald attempted to exit the vehicle to assist his brother, one of the men shot at him. Several additional shots were fired in his direction when, after the beating, Gerald attempted to put Oliver back in the vehicle.

¶ 3. At some later point, Gerald saw Rockette at the jail and pointed him out to jail personnel as the person who beat his brother. The individual informed him of Rockette's actual name. Gerald subsequently met with Investigator Doug Chausee and identified Rockette from a photo lineup. He also told Chausee that Rockette

had two gold front teeth, a fact Chausee was aware of from interviewing Rockette on a prior occasion.

¶ 4. The other dates relevant to this appeal are January 20 and 21 when Rockette allegedly tried to avoid arrest. The allegations with respect to those dates were as follows. By January 20, the police had identified Rockette as a suspect in the incident described. On that date, an officer saw Rockette at a convenience store and arrested him. Rockette managed to escape, however, by wriggling out of the jacket he was wearing. At the time of his flight, he had a firearm on his person, which the police recovered from the abandoned jacket.

¶ 5. The police again encountered Rockette in a second incident later that night and into the early hours of January 21. He was in a vehicle with other people, all of whom fled. The police eventually caught up with him and took him into custody. They recovered a second firearm, which contained fingerprints from Rockette.

¶ 6. A complaint filed on January 30 charged Rockette with aggravated battery as a party to the crime, contrary to WIS. STAT. §§ 940.19(5) and 939.05 (2001–02),[2] for the incident on January 4. The complaint added enhancers for committing the crime while armed, *see* WIS. STAT. § 939.63(1)(a) and (2), and as a habitual offender, *see* WIS. STAT. § 939.62.

¶ 7. On February 26, the circuit court dismissed another complaint relating to the night Rockette fled from the police and combined the charges therein with this case, essentially combining two separate prosecutions into one. The information charged Rockette with a second count arising out of the January 4 altercation, namely first-degree recklessly endangering safety, con

---

[2] All references are to the 2001–02 version of the Wisconsin Statutes unless otherwise noted. Please refer to language effective prior to February 1, 2003, where applicable.

trary to WIS. STAT. § 941.30(1). Count 2 also added enhancers for habitual offender status and committing a crime while armed. The information also added charges relating to the other complaint.

¶ 8. An amended information, dated March 2, included charges relating to the January 20–21 offenses. Counts 3 through 7 related to the events of January 20. These counts were as follows: (1) Count 3, resisting an officer, contrary to WIS. STAT. § 946.41(1); (2) Count 4, escape from custody, contrary to WIS. STAT. § 946.42(3)(a); (3) Count 5, carrying a concealed weapon, contrary to WIS. STAT. § 941.23; (4) Count 6, possession of a firearm by a felon, contrary to WIS. STAT. § 941.29(2); and (5) Count 7, obstructing an officer, contrary to § 946.41(1). Count 8 charged Rockette with a second count of possession of a firearm by a felon, contrary to § 941.29(2). All six new counts added the habitual offender enhancer. Although Count 8 appears to refer to the January 4 date, the State later clarified that it related to the gun recovered on January 21 during Rockette's second attempt to evade the authorities.

¶ 9. Defense counsel at some point arranged a meeting for March 14, at which Rockette, counsel, and Chausee were to be present. Although prior to that date Rockette had not agreed to speak with the police, counsel deemed the meeting to be in Rockette's interests, as counsel hoped Rockette would obtain some sort of consideration from the State in return for his cooperation. In particular, counsel knew the State was interested in obtaining information about several offenses involving Rockette's accomplice in the aggravated battery and other individuals.

¶ 10. Before the interview started, counsel advised Rockette that so long as he did not receive any

*Miranda* warnings, nothing he admitted to could be used against him. Counsel also requested that Chausee not *Mirandize* his client. Chausee abided by that request and did not administer the warnings. During the meeting, Rockette gave statements, implicating himself in the January 4 incident. Specifically, he confessed that he was present at the scene of the battery with Lucas Gilliam, his alleged accomplice, and that he had a weapon.

¶ 11. Counsel withdrew from the case on May 18, after the court granted his motion to sever the charges arising from the events of January 20 and 21. After one unsuccessful substitution, new counsel entered the case, and the circuit court set a November trial date. That date was postponed to February 2002, however, to give defense counsel more time to explore a possible alibi defense.

¶ 12. The alibi defense never materialized. Defense counsel never submitted a list of alibi witnesses. In late January 2002, counsel learned about Rockette's statements to Chausee and noted that this information presented problems for an alibi defense. On January 28, the circuit court took the case off the trial calendar so that counsel could have a *Miranda-Goodchild*[3] hearing on the admissibility of Rockette's confession. Two days later, counsel withdrew the alibi defense.

¶ 13. Counsel made his written motion to suppress in February, and the court heard arguments on the motion in March. The court issued a written decision denying the motion on April 18. The case was once again set for trial and rescheduled, with trial ultimately being reset at the adjourned January 27, 2003, final

---

[3] *"Goodchild"* refers to *State ex rel. Goodchild v. Burke*, 27 Wis. 2d 244, 133 N.W.2d 753 (1965).

pretrial hearing. Counts 1, 2, and 8 would go to trial on April 1, and the remaining severed charges were to be tried on April 29.[4]

¶ 14. The Friday prior to trial, Gerald signed a statement retracting his accusations against Rockette. He subsequently renounced that retraction, however, explaining to Chausee that Rockette's friends had attacked him and forced him to sign the statement. Gerald also informed the defense investigator that he was "100 percent standing behind" his original statements.

¶ 15. On Monday, March 31, the day before trial, defense counsel moved to withdraw from representation of Rockette, who had informed counsel that he would no longer communicate with counsel regarding his case. The court heard the motion the next morning. Rockette expressed dissatisfaction with counsel's performance and asked to represent himself or have a new lawyer appointed. The circuit court found that Rockette was simply refusing to cooperate with counsel and that he was doing so because he wanted to delay the trial and because he thought different rules applied to pro se defendants. Accordingly, it denied the motion to withdraw.

¶ 16. At the same hearing, the court granted the State's motion to admit evidence that Rockette fled from the police on January 20 by slipping out of his jacket. Although this evidence related to the severed charges, the court agreed that such evidence was rel-

---

[4] The circuit court later moved the trial of Count 8—after the State noticed that the January 4 date on the information should have been January 21—so that it would be tried with the other severed charges. Apparently the incorrect date on the information initially led to the charge not being properly severed.

evant. It reasoned that Rockette had fled after the officer identified him as someone involved in the January 4 incident and therefore tended to show consciousness of guilt.

¶ 17. In addition to Rockette's flight from custody and his statements to Chausee, the State was prepared to present several other pieces of evidence to prove its case. First, Gerald, having renounced his statement repudiating his original accusations, showed up at trial with his brother, and the State intended to present his eyewitness testimony. Another witness the State planned to call, Lonnie Grandberry, claimed to have been present at the scene of the beating.[5] In addition, the State planned to elicit Grandberry's testimony that Rockette had made a jailhouse confession to him in which he admitted his participation in the battery of Oliver. The State had also identified Terell Bolton as a third potential eyewitness.

¶ 18. Besides the eyewitnesses, the State also planned to call Elliot Campbell, a second inmate who would testify that Rockette had made a jailhouse confession to him. Counsel had warned Rockette in their previous discussions that he knew Campbell and that he was a believable, likeable witness who would "come off good to the jury."

¶ 19. On Wednesday, April 2, the parties showed up for the scheduled trial. Before the jury was brought in, the court inquired whether Rockette understood the State's final offer to plea. At that point, the assistant district attorney suggested that she meet with the defendant and defense counsel off the record to discuss

---

[5] The record contains multiple spellings of this witness' name.

that offer. The State's suggestion was accepted, and both sides reached an agreement.

¶ 20. Rockette agreed to plead to Count 2, recklessly endangering safety as party to the crime and as a habitual offender, and to Count 8, possession of a firearm by a felon. The enhancer in Count 8 was to be dropped, and Counts 1 and 3–7 were to be dismissed and read in. The plea agreement gave Rockette an exposure of thirty years, and the State agreed to recommend twenty while leaving to the court how to divide the time between incarceration and supervision and whether the sentence would be concurrent with or consecutive to any other sentences. Following a colloquy, the circuit court accepted Rockette's pleas of no contest.

¶ 21. On May 12, the circuit court granted counsel's motion to withdraw from representation, and on September 23, new counsel filed a motion to withdraw Rockette's plea. The court took evidence and heard arguments on the motion on October 31, November 5 and December 8. Concluding that "Rockette's claim that he was coerced into a hasty decision" by trial counsel's lack of preparation had no support in the record, the court denied his motion in a December 12, 2003 decision. The case proceeded to sentencing on February 10, 2004.

¶ 22. Rockette appeals the order that denied his motion to suppress his confession to Chausee and the judgments of conviction. He first renews his argument that the statements he made concerning the January 4 incident were made without *Miranda* warnings and therefore should not have been admissible against him. Whether a defendant made a valid waiver of his or her *Miranda* rights presents a question of constitutional

fact. *State v. Santiago*, 206 Wis. 2d 3, 18, 556 N.W.2d 687 (1996). We review the ultimate issue of waiver de novo, benefiting from the circuit court's analysis, but we will not set aside the court's findings of historical or evidentiary fact unless they are clearly erroneous. *See id.*; *State v. Turner*, 136 Wis. 2d 333, 343–44, 401 N.W.2d 827 (1987).

■■■■

¶ 23. The State has the burden of proving, by a preponderance of the evidence, that the defendant received his or her *Miranda* warnings or made a valid waiver of rights. *State v. Raflik*, 2001 WI 129, ¶ 55, 248 Wis. 2d 593, 636 N.W.2d 690. A valid waiver must be knowing and intelligent. *See id.* Moreover, the suspect must personally waive his rights. *See State v. Hanson*, 136 Wis. 2d 195, 213, 401 N.W.2d 771 (1987). If the State fails to meet its burden of proving an effective waiver, the improperly admitted statements are inadmissible in its case-in-chief. *See State v. Schultz*, 152 Wis. 2d 408, 417–18, 448 N.W.2d 424 (1989). It may, however, use the statements as impeachment evidence so long as the statements were otherwise voluntary and not the product of coercion. *Id.* at 418.

¶ 24. We conclude that Rockette did not waive his *Miranda* rights. Rockette does not argue that Chausee did anything to coerce his confession. Indeed, the purpose of Rockette's cooperation at the interview, which his own counsel set up, was to increase his chances of securing some leniency from the State. Thus, his statements were voluntary. Despite the fact that the statements were voluntary, however, we cannot say that an intelligent waiver occurred. First, Rockette never personally indicated that he wished to waive his rights. Counsel could not do that for him by simply arranging a meeting with the police. *See Hanson*, 136 Wis. 2d at

213. Moreover, we cannot say that any purported waiver was *knowing* and *intelligent.* Rockette's statements were clearly admissible for impeachment purposes, *see Schultz,* 152 Wis. 2d at 417–18, yet, by telling Rockette that whatever he said could not be used against him, his attorney led him to believe that his statement could not be admitted in court at all. Rockette obviously did not know and understand the potential consequences of making a voluntary confession to the police because his counsel gave him erroneous information.

■

¶ 25. To its credit, the State concedes that a *Miranda* violation probably occurred. It argues, however, that based on *State v. Semrau,* 2000 WI App 54, ¶ 22, 233 Wis. 2d 508, 608 N.W.2d 376, the error was harmless. In *Semrau,* we stated, "In a guilty plea situation following the denial of a motion to suppress, the test for harmless error on appeal is whether there is a reasonable possibility that the erroneous admission of the disputed evidence contributed to the conviction." *Id.; see also State ex rel. Warren v. Schwarz,* 219 Wis. 2d 615, 631, 579 N.W.2d 698 (1998) (no contest plea similar in practical effect to guilty plea).

■

¶ 26. Whether to apply *Semrau* to the facts of this case presents a question of law that we review independently. *See State v. Keith,* 216 Wis. 2d 61, 69, 573 Wis. 2d 888 (Ct. App. 1997) (choosing what legal standard to apply is a legal question we review without deference). We decline to do so in this case in light of the supreme court's recent decision in *State v. Hale,* 2005 WI 7, 277 Wis. 2d 593, 691 N.W.2d 637. In *Hale,* the court articulated the following harmless error rule for constitutional error: "An error is harmless if the beneficiary of the error proves 'beyond a reasonable doubt that the

error complained of did not contribute to the [result].' " *Id.*, ¶ 60 (citation omitted). The court may consider, among other factors, the frequency of the error, the importance of the erroneously admitted evidence, the presence or absence of evidence corroborating or contradicting the erroneously admitted evidence, whether the improperly admitted evidence duplicates untainted evidence, the nature of the defense, and the nature and overall strength of the State's case. *Id.*, ¶ 61; *see State v. Norman*, 2003 WI 72, ¶ 48, 262 Wis. 2d 506, 664 N.W.2d 97. We independently apply *Hale* to the facts of this case. *See State v. Trochinski*, 2002 WI 56, ¶ 16, 253 Wis. 2d 38, 644 N.W.2d 891 (application of facts to legal standard a question of law we review de novo).

¶ 27. We conclude that the result in this case would have been the same beyond a reasonable doubt even if the circuit court had granted Rockette's suppression motion, given the overwhelming incentives Rockette had to plead rather than go to trial. First, the State had an extremely strong case. Both Gerald and Grandberry would definitively place Rockette at the scene as a participant, and the State had Bolton as a potential third eyewitness. Theoretically, Rockette could have tried to impeach Gerald with his March 27 recantation, but Gerald's explanation that he had disavowed his original accusations only because Rockette's friends had assailed him and forced him to sign the retraction statement before he escaped from their vehicle would have been equally powerful circumstantial evidence of guilt.

¶ 28. Moreover, Grandberry and Campbell would testify that Rockette had made jailhouse confessions to them. Grandberry would indicate that Rockette admitted at least to Count 1 of the information, the aggravated battery. The State has characterized the two confessions as "internally very consistent." Further,

defense counsel had warned his client that he knew Campbell and that the witness would likely "come off good to the jury."

¶ 29. In addition to the above evidence, the State intended to introduce Rockette's January 20 flight from police. Because the arresting officer had identified him as a suspect in the January 4 incident, his flight reflected consciousness of guilt. In light of the eyewitness testimony and jailhouse confessions identifying Rockette as one of the participants in the battery and the other circumstantial evidence of guilt, namely, attempts by Rockette's friends to intimidate the victim's brother, Rockette's admissions to Chausee were largely cumulative.

¶ 30. Rockette had a comparatively weak defense. He never developed a viable alibi theory. Defense counsel at one point asked for an extension of time in order to meet with two potential witnesses, but at that point, he did not even know whether they were, in fact, alibi witnesses. The record does not identify these individuals or what testimony they might have offered. Even if alibi had remained a viable theory of defense and the circuit court had granted Rockette's suppression motion, the State could have used Rockette's statements to Chausee as impeachment evidence. *See Schultz*, 152 Wis. 2d at 418 (statements obtained in violation of *Miranda* inadmissible in case-in-chief but permitted for impeachment purposes so long as statements were otherwise voluntary).

¶ 31. In addition to the comparative strength of the State's case versus Rockette's defense and the fact that the confession largely duplicated other evidence, Rockette had a compelling incentive to plead in order to reduce his exposure to incarceration. For all eight counts combined, Rockette faced a maximum sentence

271

of ninety-six years. The plea offer cut his maximum exposure down to thirty years, reducing the maximum sentence by more than two-thirds. Additionally, the State agreed to recommend only twenty years, seventy-two years less than his original maximum exposure. Given all these factors, we conclude that no reasonable doubt remains that Rockette would have accepted the plea regardless of the circuit court's decision on his motion to suppress.

¶ 32. Rockette also challenges his convictions on the basis that the circuit court denied his constitutional right to retain the counsel of his choice by refusing to allow him to proceed either pro se or with a new attorney. We deem this argument waived. *See Trochinski*, 253 Wis. 2d 38, ¶ 34 n.15 ("A plea of no contest waives all non-jurisdictional defects in the proceedings." (citation omitted.)). Accordingly, we decline to address it.

¶ 33. We affirm. Rockette's counsel gave him questionable advice that made a knowing and intelligent waiver of his rights impossible. Rockette did not know his statements could be used at trial to impeach him because his attorney had told him exactly the opposite. Regardless of whether a *Miranda* violation occurred, however, we are convinced beyond a reasonable doubt that the strength of the State's case, the weakness of Rockette's case, the largely cumulative nature of the confession, and the incentive to reduce his sentencing exposure would have led Rockette to accept the State's offer. Moreover, he waived his right to counsel claim when he accepted the plea.

*By the Court.*—Judgments and order affirmed.