ANN WALSH BRADLEY, J.
¶ 89. (concurring). I agree with the dissent that the tracking of a cell phone constitutes a search in the context of the Fourth Amendment and that the warrantless search here was not justified by exigent circumstances. Dissent, parts I-V Likewise, I agree that Subdiaz-Osorio's statement was sufficient to invoke his right to counsel. Dissent, part VI.
¶ 90. However, I part ways with the dissent because, like the court of appeals, I conclude that the circuit court's errors in denying the defendant's suppression motion were harmless. There is no reasonable probability that the circuit court's failure to grant the suppression motion contributed to the conviction. Accordingly; I respectfully concur in the mandate of the lead opinion.
I
¶ 91. The facts in this case are for the most part uncontested. After a night of drinking the defendant, Subdiaz-Osorio, and his brother, Ojeda-Rodriguez, got *92 into an argument in front of a guest, Mintz, at their trailer. The argument escalated and after his brother punched him, the defendant retrieved a knife and stabbed his brother in the eye. Then, after the brother fell down, the defendant began kicking and punching him in the face. After Mintz pushed Subdiaz-Osorio away from his brother, Subdiaz-Osorio left the room.
¶ 92. Subdiaz-Osorio asked his roommate, Martinez, for help bandaging Ojeda-Rodriguez. Martinez wanted to call the police, but Subdiaz-Osorio refused and threatened to stab Martinez if he did. Martinez telephoned Carreno-Lugo asking for assistance taking care of Ojeda-Rodriguez. Upon arriving she bandaged him, then she and the defendant went back to her trailer and went to bed. The next morning Martinez found the brother dead. After telling the defendant that his brother was dead and that Martinez was calling the police, Subdiaz-Osorio left.
¶ 93. Police arrived and found Ojeda-Rodriguez's badly beaten body. When they interviewed Carreno-Lugo, she told them that the defendant asked for help because he had stabbed his brother. He spent the night at her trailer, and after learning his brother was dead, he told her that he had to leave. Careeno-Lugo allowed the defendant to take her car. She told police that he had family in Illinois and Mexico and acknowledged that he might be headed to Mexico.
¶ 94. After tracking his cell phone, the police located Subdaiz-Osorio in Arkansas. They took trace evidence from him, including DNA. The next day, after officers read the defendant his Miranda[1] rights, he signed a waiver of rights form and agreed to speak without an attorney present. During the interview, the *93 defendant asked if he would be taken back to Kenosha. The officer informed him that he would first have to appear before a judge in Arkansas who would make that determination. At that point the defendant asked "How can I do [sic] to get an attorney here because I don't have enough to afford one?" The officer told him that Arkansas would appoint him a lawyer for the hearing, and continued the interview. At one point during the interview, the defendant gave a version of the stabbing, indicating that his brother brought the knife into the room.
¶ 95. A few weeks later, after the defendant was read his Miranda rights again and signed another waiver of rights form, Subdiaz-Osorio recounted the events of the evening, again indicating that his brother brought the knife. When the officer interviewing the defendant told him that his version of the events conflicted with Mintz's version, the defendant admitted that he had retrieved the knife.
¶ 96. Subdiaz-Osorio was charged with first-degree intentional homicide. After his suppression motion was denied, Subdiaz-Osorio accepted a plea bargain and pled to a reduced charge of first-degree reckless homicide by use of a deadly weapon. Subdiaz-Osorio now argues that the circuit court erred in failing to suppress the DNA evidence, the location of his apprehension, and his statement in the interview that his brother brought the knife into the room.
II
¶ 97. In assessing whether a trial error is harmless, we focus on the effect of the error on the jury's verdict. State v. Weed, 2003 WI 85, ¶ 29, 263 Wis. 2d 434, 666 N.W.2d 485. We have described the test as *94 "whether it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." Id. (quoting State v. Harvey, 2002 WI 93, ¶ 44, 254 Wis. 2d 442, 647 N.W.2d 189, quoting in turn Neder v. United States, 527 U.S. 1, 15-16 (1999)). To make that determination, "a court must be able to conclude 'beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error.'" Id. (quoting Harvey, 254 Wis. 2d 442, ¶ 48 n.14).
¶ 98. However, in a guilty plea situation following the denial of a motion to suppress, the test for harmless error on appeal is whether there is a reasonable probability that the erroneous admission of the disputed evidence contributed to the conviction. State v. Semrau, 2000 WI App 54, ¶ 21, 233 Wis. 2d 508, 608 N.W.2d 376; State v. Sturgeon, 231 Wis. 2d 487, 503-04, 605 N.W.2d 589 (Ct. App. 1999). As part of this inquiry, the court considers:
(1) the relative strength and weakness of the State's case and the defendant's case; (2) the persuasiveness of the evidence in dispute; (3) the reasons, if any, expressed by the defendant for choosing to plead guilty;
(4) the benefits obtained by the defendant in exchange for the plea; and (5) the thoroughness of the plea colloquy.
Semrau, 233 Wis. 2d 508, ¶ 22.
¶ 99. As an initial matter, neither the court of appeals nor the State addressed Subdiaz-Osorio's arguments relating to the DNA evidence. It is unclear if he previously raised this as evidence he wanted suppressed. In any event, the DNA evidence is not necessary to link him to the crime scene. Subdiaz-Osorio admitted to stabbing his brother and that his asserted defenses were that he acted in self-defense and did not *95 act with utter disregard for human life. Thus, I conclude it is not reasonably probable that this evidence contributed to the conviction.
¶ 100. The second piece of evidence Subdiaz-Osorio believes should have been suppressed was the fact that he was located in Arkansas. This court has previously determined that evidence of flight has probative value as it tends to show consciousness of guilt. Wangerin v. State, 73 Wis. 2d 427, 437, 243 N.W.2d 448 (1976). In this case, however, even without the evidence that the defendant was found in Arkansas, there was strong evidence against him, including an eyewitness to the stabbing, and other witnesses he spoke with after seeking help. See State v. Quiroz, 2009 WI App 120, ¶ 28, 320 Wis. 2d 706, 772 N.W.2d 710 (admission of flight evidence harmless error where evidence of guilt was overwhelming).
¶ 101. To the extent that Subdiaz-Osorio's arrest location indicates flight, it was cumulative of other evidence. As the State asserts, the statements from Carreno-Lugo that Subdiaz-Osorio took her car and was possibly going to Mexico or Illinois, together with his absence from his home, could have independently established that he fled.
¶ 102. It is also notable that Subdiaz-Osorio received a reduced charge in exchange for his guilty plea. The charge of intentional homicide, which is a class A felony with a maximum sentence of life imprisonment, Wis. Stat. §§ 946.01(a), 939.50(3)(a), was reduced to a charge of reckless homicide, which is a class B felony with a maximum sentence of 65 years imprisonment, Wis. Stat. §§ 940.02(1), 939.50(3)(b), 939.63(l)(b).
¶ 103. Because Subdiaz-Osorio accepted a reduced plea, in the face of strong evidence against him, including eyewitness testimony and his own confession, *96 I conclude it is not reasonably probable that the circuit court's failure to suppress the location information contributed to the conviction.
¶ 104. I turn next to the third piece of evidence Subdiaz-Osorio sought to suppress: his initial statement to officers that his brother brought the knife into the room. The harmless error analysis also applies here. State v. Armstrong, 223 Wis. 2d 331, 368-370, 588 N.W.2d 606 (1999) (concluding that the admission of evidence obtained in violation of Miranda was harmless error); State v. Harris, 199 Wis. 2d 227, 263, 544 N.W.2d 545 (1996) (determining that it was harmless error for the court to admit the fruits of a Miranda violation); State v. Rockette, 2005 WI App 205, ¶ 33, 287 Wis. 2d 257, 704 N.W.2d 382 (determining that regardless of whether a Miranda violation occurred, the error was harmless as the defendant would still have accepted the State's plea deal).
¶ 105. As with the DNA evidence and the location evidence, the denial of Subdiaz-Osorio's suppression motion with respect to his statement about his brother bringing the knife to the room is also harmless error. As discussed above, the State had a strong case against Subdiaz-Osorio, there was an eyewitness who could testify about who brought the knives, and Subdiaz-Osorio confessed. In exchange for his guilty plea, he received a reduced charge. Accordingly, I conclude that it is not reasonably probable that the circuit court's failure to suppress Subdiaz-Osorio's statements contributed to the conviction.
¶ 106. In sum, although I determine that the circuit court erred in denying the defendant's motion to suppress, I conclude that the circuit court's errors were harmless. Accordingly, I respectfully concur in the mandate of the lead opinion.