PER CURIAM.
¶1 Seth Lehrke appeals a judgment of conviction, entered following a jury trial, and an order denying his motion for postconviction relief. Lehrke contends the circuit court erred by denying his motion to suppress his confession because his Miranda[1] waiver was not knowing and intelligent, and by excluding all portions of a SANE[2] report, except for its medical conclusion. We agree with Lehrke on these issues. Accordingly, we reverse and remand for suppression of Lehrke's confession and for a new trial.[3]
BACKGROUND
¶2 Lehrke was charged with first-degree sexual assault of a child under the age of thirteen. His six-year-old niece, Emily, alleged Lehrke sexually assaulted her in the home in which Lehrke lived with his mother, his stepfather, his half-brother, Rod, and Rod's two children, Emily and Sarah.[4]
¶3 Two detectives interviewed Lehrke for approximately ninety-nine minutes, while Lehrke was shackled and handcuffed in an interrogation room. The interview was videotaped and transcribed. This court reviewed both the videotape and transcript as part of our review on appeal. Detective David Kleinhans gave a Miranda warning and Lehrke agreed to talk with the officers, as the following exchange shows:
[Kleinhans]: Well, let me read you your rights here before we get into anything and I'll ask you two questions then I just need a yes or no answer. Okay you have the right to remain silent. Anything you say can and will be used against you in the [c]ourt of [l]aw. You have the right to consult a lawyer before questioning, to have a lawyer present with you during questioning. If you cannot afford to hire a lawyer, one will be appointed to represent you at public expense before or during any questioning if you wish. If you decide to answer questions now without a lawyer present, you have the right to stop the questioning and recess anytime you wish. You have the right to ask for a lawyer at any time you wish including the questioning. Do you understand each of these rights?
[Lehrke]: Yes.
[Kleinhans]: You have these rights, and are you now willing to answer questions or make a statement?
[Lehrke]: Huh? [transcript]; ["Alright." video[5] ]
[Kleinhans]: What's that?
[Lehrke]: What was the last two things you said thought. I heard it, but I-[transcript]; ["What was the last two things you said though? I mean, not on the card, but I didn't-" video[6] ]
[Kleinhans]: Yeah. You have these rights are you now willing to answer questions or make a statement. Basically do you want to talk to me today and try to figure out what's going on [here]?
[Lehrke]: Yeah. I want to know what's going on. Because I should not be sitting here, but, okay.
During the interrogation, Lehrke initially denied having any sexual contact with Emily. Ultimately, after the detectives told him what Rod and Emily had reported, Lehrke confessed to touching his penis to Emily's buttocks.
¶4 Lehrke moved to suppress his videotaped confession on the basis that his Miranda waiver was invalid and that his confession was not knowingly, intelligently, and voluntarily made. The circuit court denied Lehrke's motion, concluding that Lehrke's waiver was valid, his confession was voluntary, and "there was no indication of any learning disabilities playing a role in the interrogation." The matter proceeded to a trial where Lehrke was convicted of the sexual assault charge.
¶5 At trial, Lehrke testified that he did not understand his Miranda rights during the interrogation and that the detective read him his rights "way too fast." While Lehrke admitted that he "agreed to their story" during the interrogation, he repeatedly stated that the detective talked too fast, he could not understand the detective, and he was scared and very confused during the interrogation.
¶6 A psychologist, Dr. Brian Stress, testified he assessed Lehrke by using two psychological tests. The IQ test results showed Lehrke was "just above" the level of intellectual disability, having scored in the third percentile for verbal ability, the eighth percentile for performance ability, the first percentile for comprehending verbal information and understanding cause and effect, and the fourth percentile for overall IQ for his age. Based on the results of the comprehension test, Stress concluded "[Lehrke]'s going to have difficulties in the world understanding stuff." An academic achievement test showed Lehrke's reading ability was at a fourth-grade level, his comprehension was at a sixth-grade level, and his math was below a third-grade level. Lehrke's high school special education teacher testified that Lehrke had trouble understanding and remembering information after hearing it, that he would often pretend to understand things, and that he was unable to communicate effectively.
¶7 The SANE report indicates Emily told the examining nurse she felt fine and was not hurt, and Emily did not know why she was at the hospital. The report also describes Rod's strange behavior and interactions with nursing staff. After hearing Emily tell the nurse that she did not hurt and did not know why they were at the hospital, Rod became upset. He told the nurse, "I'm here for one thing, for her ass and vagina to be checked[ ]-she either got it in her ass or vagina." While at the hospital, Rod was texting on his phone constantly, did not make eye contact with the nurse, and did not ask questions after the exam. The report describes Emily's exam results as "normal." In addition, the report states that after Emily and Rod left, a stranger brought Emily's discharge instructions in and reported that the patient's father threw the instructions on the ground outside the emergency department entrance.
¶8 During trial, the State moved to prohibit Lehrke from asking Rod questions related to his conduct during Emily's exam, arguing it was not relevant. Lehrke sought to admit the SANE report into evidence to undermine Rod and Emily's credibility and to support a theory that Rod "coached" Emily in telling her story. The circuit court granted the State's motion to exclude the SANE report on the grounds that it was not relevant because it did not show Rod tried to influence Emily's story. Due to the court's ruling, the parties stipulated to the report's medical conclusion and agreed not to call the nurse to testify.
¶9 Lehrke's defense was based, in part, on an argument that his Miranda waiver was invalid and his subsequent confession was unknowing and involuntary. He also argued that Rod was jealous of their mother's protective relationship with Lehrke, and Rod manufactured the allegations to get back at Lehrke.
¶10 The jury found Lehrke guilty of first-degree sexual assault of a child under the age of thirteen. He was sentenced to five-and-a-half years of initial confinement and four years of extended supervision.
¶11 Lehrke filed a postconviction motion seeking a new trial, raising substantially the same issues that he does on appeal. At a motion hearing, the circuit court denied the majority of Lehrke's claims, but it reserved its ruling on Lehrke's ineffective assistance of counsel claim until a Machner[7] hearing was held. Following the Machner hearing, the circuit court denied Lehrke's postconviction motion in full in an oral ruling. Lehrke now appeals.
DISCUSSION
A. Miranda warning
¶12 Lehrke argues the circuit court erred by admitting his confession because his Miranda waiver was invalid.
[A] suspect must "be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires."
State v. Harris , 2017 WI 31, ¶13, 374 Wis. 2d 271, 892 N.W.2d 663 (quoting Miranda v. Arizona , 384 U.S. 436, 479 (1966) ).
¶13 In order to admit a defendant's custodial statement, the State must show both that the defendant was informed of his or her Miranda rights and knowingly and intelligently waived them, and that the defendant's statement was voluntary. State v. Santiago , 198 Wis. 2d 82, 89-90, 542 N.W.2d 466 (Ct. App. 1995), aff'd as modified , 206 Wis. 2d 3, 556 N.W.2d 687 (1996). The State establishes a prima facie case as to Miranda when it "establishe[s] that [the] defendant has been told or has read all the rights and admonitions required in Miranda , and the defendant indicates he [or she] understands them and is willing to make a statement." State v. Lee , 175 Wis. 2d 348, 360, 499 N.W.2d 250 (Ct. App. 1993). For a defendant's Miranda waiver to be knowing and intelligent, the defendant must be aware, first, of the State's intention to use his or her statements to secure a conviction and, second, of the fact that he or she can stand mute and request a lawyer. Lee , 175 Wis. 2d at 365 (citation omitted).
¶14 Typically, appellate courts review the denial of suppression under a two-part standard of review. We uphold the circuit court's findings of fact unless they are clearly erroneous, but we review de novo whether those facts warrant suppression. State v. Knapp , 2005 WI 127, ¶19, 285 Wis. 2d 86, 700 N.W.2d 899. Lehrke argues, and the State does not dispute, that where a video recording of the Miranda warning and confession is in the appellate record, as it is here, we review the video de novo to determine if the defendant's waiver was knowing and intelligent. See State v. Jimmie R.R. , 2000 WI App 5, ¶39, 232 Wis. 2d 138, 606 N.W.2d 196 (1999) (reasoning that because the only evidence on the relevant question of fact was the videotape itself, which was in the appellate record, the appellate court was in as good a position as the circuit court to make the determination).[8]
¶15 We agree with Lehrke and conclude that the State did not meet its burden to establish a prima facie case that he knowingly and intelligently waived his Miranda rights. The State made a prima facie case that Lehrke was read all the rights and admonitions required in Miranda , and Lehrke indicated he understood them and was willing to make a statement. However, we conclude Lehrke's Miranda waiver was not knowing and intelligent, as it is not clear that Lehrke was aware of the State's intention to use his or her statements to secure a conviction or that he could stand mute and request a lawyer.
¶16 Lehrke has a very low IQ and has a demonstrated difficulty understanding verbal information, and the Miranda warning was read to him over twice as fast as the normal speaking rate.[9] Although the circuit court found that the reading of the warning was "intelligible," this court's review of the video recording shows that conclusion was clearly erroneous. A listener could not clearly identify the separate phrases in the warning Kleinhans read, and Kleinhans also failed to fully and comprehensibly enunciate crucial terms, such as: "against," "consult," "expense," "lawyer," "remain," and "silent." The speed with which the warning was read and the lack of articulation caused the Miranda warning to be incomprehensible, even to a person with a normal IQ.
¶17 During the interview, Lehrke stated he understood the warning. However, Kleinhans read his next question so quickly that it was also incomprehensible. The video indicates that Kleinhans stated: "Realizing you have these rights," but the transcript states: "Yeah. You have these rights," and both the video and transcript indicate Kleinhans then asked: "are you now willing to answer questions or make a statement[?]"[10] Lehrke's confusion is readily apparent from the video at this point. Lehrke pauses, and then says, "Alright" in apparent response to Kleinhans-as if to move on with the interview without really answering the question. It appears Kleinhans also picks up on this confusion because he then asks Lehrke, "What's that?" Kleinhans ultimately repeats the question, but he adds: "Basically, do you want to talk to me today and try to figure out what's going on?" In response, Lehrke indicates he wants to find out what's going on: "Yeah. I want to find out what's going on. Because I shouldn't be sitting here, but, okay."
¶18 Even if Kleinhans had clearly and comprehensibly read Lehrke the Miranda warning, Kleinhans' follow-up statement regarding the purpose of the Miranda warning was misleading. A suspect's waiver of his or her Miranda rights does not mean that the suspect will "find out what's going on." Rather it means the suspect will give up his or her right to remain silent, will answer questions and/or give a statement to law enforcement, and will do so without the presence and assistance of counsel. Here, the exchange shows that Lehrke wanted to "find out what's going on." It does not demonstrate that Lehrke knowingly and intelligently waived his Miranda rights or wanted to make a statement to the officers. Despite Lehrke's statement that he understood his rights, the totality of the circumstances establishes he did not. Therefore, the State did not meet its burden to demonstrate a prima facie case under Miranda , and Lehrke's confession must be suppressed. See State v. Rockette , 2005 WI App 205, ¶23, 287 Wis. 2d 257, 704 N.W.2d 382 ; Lee , 175 Wis. 2d at 360.
B. SANE report
¶19 Lehrke also argues the circuit court erred by excluding the full SANE report from Emily's visit to the hospital. Lehrke contends that because the report was probative of a material issue in the case-namely, Emily's credibility and a motive to lie-the circuit court misapplied the law by concluding that the report was not relevant evidence. Appellate courts review a circuit court's decision to admit or exclude evidence under an erroneous exercise of discretion standard. Martindale v. Ripp , 2001 WI 113, ¶28, 246 Wis. 2d 67, 629 N.W.2d 698. " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." WIS. STAT. § 904.01.
¶20 We agree with Lehrke that the circuit court erroneously concluded that the full SANE report was not evidence relevant to the issue being tried. The entire case against Lehrke was based upon Emily's credibility. The description of Rod's conduct at the hospital contained in the report was relevant because it had a tendency to show Emily had a motive to lie. See State v. Echols , 2013 WI App 58, ¶18, 348 Wis. 2d 81, 831 N.W.2d 768 (concluding that evidence offered for the purpose of showing a child sexual assault victim had a motive to fabricate the assault was relevant). The report stated that Rod became "very upset" when Emily stated she did not know why she was at the hospital and she was not hurt. Rod's anger "escalated" when the nurse explained why Emily had to be asked these questions. Further, he threw Emily's discharge instructions on the ground when they left the hospital. These facts support Lehrke's defense theory that Emily had a motive to lie so as to please Rod, and that denying the assault caused Rod to become very angry.
¶21 Although the circuit court excluded the SANE report on relevance grounds, the State argues on appeal that we should uphold the circuit court's exclusion of the full SANE report because it is inadmissible hearsay. We are not persuaded. Whether evidence is admissible under a hearsay exception is a question of law that we review de novo. State v. Joyner , 2002 WI App 250, ¶16, 258 Wis. 2d 249, 653 N.W.2d 290.
¶22 Here, the report itself falls under the patient healthcare records exception to the rule against hearsay. See WIS. STAT. § 908.03(6m). Insomuch as the SANE report contains statements Rod made during the exam, those statements are admissible under the hearsay exception for statements made for purposes of medical diagnosis or treatment. See § 908.03(4). Rod made the statements for the purposes of medical diagnosis or treatment, as he was specifically asking the nurse to examine Emily for signs of a sexual assault. See State v. Huntington , 216 Wis. 2d 671, 693-94, 575 N.W.2d 268 (1998) (holding that parental allegations of sexual assault to a child's health care providers are admissible under the medical diagnosis or treatment exception).
¶23 We therefore conclude that because the full SANE report is relevant evidence and is not inadmissible hearsay, the circuit court erroneously exercised its discretion by excluding it.
By the Court. -Judgment and order reversed and cause remanded with directions.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.

Miranda v. Arizona , 384 U.S. 436 (1966).

Referring to a sexual assault nurse examiner.

Because we reverse on the grounds that Lehrke's Miranda waiver was invalid, it is not strictly necessary for us to address the exclusion of the SANE report. However, we choose to do so for the sake of efficiency and to give guidance to the circuit court should the issue arise again.
Lehrke also raises additional arguments: (1) that his confession was not voluntarily made and, therefore, should have been suppressed; (2) that the circuit court erred by excluding expert testimony on false confessions; (3) that the exclusion of false confession expert testimony prevented him from presenting a complete defense; (4) that the State engaged in prosecutorial misconduct in its closing argument; and (5) that his trial counsel was ineffective. Given our reversal, we need not address these arguments. See Turner v. Taylor , 2003 WI App 256, ¶1 n.1, 268 Wis. 2d 628, 673 N.W.2d 716 (when one issue is dispositive, we need not reach the other issues raised).

Pursuant to Wis. Stat. Rule 809.86(4) (2015-16), we use a pseudonym instead of the victim's name. Due to the sensitive nature of this matter, we also use pseudonyms to refer to the victim's sister and father.
All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

Although the transcript of the interrogation provided in the record reflects Lehrke's response to be "Huh?," it is clear from the video recording, which is also in the record, that Lehrke responded, "Alright."

Again, our understanding of what was said on the video recording differs from the transcript.

State v. Machner , 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

We note that because Kleinhans testified regarding the events on the video, a clearly erroneous standard of review may be appropriate. See State v. Walli , 2011 WI App 86, ¶17, 334 Wis. 2d 402, 413, 799 N.W.2d 898, 904 (holding in cases where there is a video recording and disputed testimony about what the video shows, the appropriate standard of review is clearly erroneous). However, given that the State does not dispute Lehrke's argument, we view as conceded that de novo review is appropriate. Regardless, as explained below, reversal of the circuit court's denial of suppression is warranted under either standard.

Lehrke argued in his initial brief that he was read the Miranda warning as "1,121 words as one run-on sentence in just 25 seconds (or 290 words per minute)." Although this calculation was inaccurate, his reply brief clarified that the Miranda warning was actually read as 121 words in 25 seconds, which is a rate of 290 words per minute. We accept Lehrke's argument that this is over twice the normal speaking rate, based upon the State's failure to dispute that argument and the circuit court's finding that "the reading of those rights was rapid. I can't talk that fast, myself." In addition, as stated, we have independently reviewed the video recording.

It is unclear from Kleinhans' intonation whether he was making a statement or asking a question.